IN RE: BECK, JEANNE ANNE, Minor Child

No. 9129DC1221

(Filed 6 April 1993)

1. **Searches and Seizures § 32 (NCI3d)— termination of parental rights—videotapes and other sexually explicit materials— criminal charges dismissed—disposition of materials**

Videotapes and other sexually explicit materials were admissible in a termination of parental rights hearing where deputies went to respondents' house to measure the temperature of the water heater; they seized approximately 1,100 videotapes and other sexually explicit materials dealing with female bondage; respondents were arrested and charged with sexual exploitation of a minor and taking indecent liberties with a minor; DSS petitioned to terminate respondents' parental rights; the criminal charges were dismissed; and the Sheriff's Department transferred the seized materials to DSS. Although respondents argue that the North Carolina Constitution prohibits the State from depriving a person of property, that DSS is not a law enforcement agency, that the transfer of goods was not permitted under N.C.G.S. § 15A-258, and that the materials were

IN RE BECK

[109 N.C. App. 539 (1993)]

inadmissible in the termination of parental rights hearing because they were illegally held and transferred, there is nothing to indicate that respondents ever requested that the materials be returned and, even if they had been returned, DSS could have obtained them by subpoena.

**2. Evidence and Witnesses § 1732 (NCI4th) — termination of parental rights — 1,100 sexual videotapes — all placed in courtroom — no error**

There was no error in a termination of parental rights proceeding where DSS brought 1,100 alleged sexual videotapes into the courtroom. Although respondents argued that not all of the tapes had been viewed by a DSS caseworker, that some of the tapes did not involve sexual subject matter, that some of the tapes were mislabeled, and that permitting all of the tapes to be placed in the courtroom overwhelmed the trial court, it is presumed that the judge disregarded any incompetent evidence. The trial court's finding of fact focuses on the labeling of the videotapes rather than the actual content and was not dependent upon the number of videotapes actually viewed by the DSS caseworker.

**3. Evidence and Witnesses § 1732 (NCI4th) — termination of parental rights — sexual videotapes — relevant**

Videotapes and other sexual materials were relevant and admissible in a termination of parental rights proceeding where the materials were found in respondents' bedroom or underneath their bed and not in the children's bedroom. A psychologist testified that the seven-year-old child told her that she had seen two videotapes involving sexually explicit material, including female bondage, in the presence of her parents and that she could be heard asking in a videotape made by her father, "What are those girls doing in those pictures? I want to be in those pictures." Respondent answered "I'll put you in those pictures later." The materials were relevant to show the home environment of the children and to show the nature of respondents' supervision of the children.

**4. Parent and Child § 1.6 (NCI3d) — termination of parental rights — prior order — evidence sufficient**

There was no error in a termination of parental rights proceeding based on neglect in the denial of respondents' motion to dismiss where the court correctly admitted a prior

order adjudicating the child to be an abused juvenile and considered evidence of the circumstances before and after the prior adjudication of abuse, and evidence was presented that respondents had refused to submit to psychological evaluation and treatment and that there was no improvement in respondents' living and employment conditions from August 1990 to March 1991.

**Am Jur 2d, Parent and Child § 34.**

**Physical abuse of child as ground for termination of parent's right to child. 53 ALR3d 605.**

5. **Parent and Child § 1.6 (NCI3d)— termination of parental rights—findings—supported by evidence**

The trial court did not err in a termination of parental rights proceeding by finding that the child had observed sexually explicit photographs being videotaped by her father or by correlating respondents' interest in sexual bondage and torture and respondents' treatment of their children. Erroneous findings that respondents had taught the child to use the term "lolly pop" when referring to a penis and that she had seen a sexually explicit movie on television at her parents' house were not prejudicial.

**Am Jur 2d, Parent and Child § 34.**

**Sexual abuse of child by parent as ground for termination of parent's right to child. 58 ALR3d 1074.**

Appeal by respondents from judgment entered 21 May 1991 by Judge Robert S. Cilley in McDowell County District Court. Heard in the Court of Appeals 1 December 1992.

*Goldsmith & Goldsmith, P.A., by James W. Goldsmith, for petitioner appellee, McDowell County Dept. of Social Services; and Story, Hunter & Evans, P.A., by W. Hill Evans, for Guardian Ad Litem of Minor Child appellee.*

*Stephen R. Little for respondent appellant Robert Leon Beck; and Yancey and Pool, by C. Randy Pool, for respondent appellant Denise B. Beck.*

IN RE BECK

[109 N.C. App. 539 (1993)]

COZORT, Judge.

Respondents appeal from an order terminating parental rights to their two minor children on the grounds of neglect. We affirm.

Respondents are the parents of Jeanne Anne Beck, born 8 November 1985, and Susan Diane Beck, born 1 October 1973. On 15 January 1990 respondents took Jeanne to the McDowell Hospital for burns suffered from hot water. Respondents claimed that Jeanne burned herself when she fell into the bathtub. The physician who examined Jeanne concluded that the burns were consistent with the child having been dipped into hot water. Jeanne was placed in foster care on that date. On 26 January 1990, she was adjudicated an abused juvenile as defined by N.C. Gen. Stat. § 7A-517(1) (1989). On 1 February 1990, pursuant to a search warrant, deputies from the McDowell County Sheriff's Department, went to respondents' house to measure the temperature of the water heater. While there, the officers discovered and seized approximately 1,100 videotapes and other sexually explicit materials dealing with female bondage. Susan was placed in foster care on 2 February 1990 and subsequently adjudicated a dependent juvenile pursuant to N.C. Gen. Stat. § 7A-517(13) (1989).

Respondents were arrested and charged with sexual exploitation of a minor and taking indecent liberties with a minor. Respondents remained incarcerated from 5 February 1990 to 17 August 1990 pending the disposition of the criminal charges. On 20 June 1990, the McDowell County Department of Social Services (DSS) petitioned to terminate respondents' parental rights. The criminal charges were dismissed on 11 February 1991. The Sheriff's Department then transferred the seized materials to DSS after the charges were dismissed. After respondents' release, DSS offered numerous services to respondents to improve their living and employment conditions. Respondents did not seek any counseling or treatment. The termination of parental rights (TPR) hearing began on 13 May 1991, with Judge Robert S. Cilley presiding. After the three-day hearing, Judge Cilley found both children to be neglected and that there was a reasonable likelihood that the neglect would reoccur if the children were placed back in the care of respondents. Judge Cilley then ordered the termination of respondents' parental rights. From the order, respondents appeal.

We note initially that respondents' appeal as to Susan is now moot since she has reached the age of majority. As to Jeanne,

IN RE BECK

[109 N.C. App. 539 (1993)]

respondents argue that the trial court erred: (1) by permitting witnesses to testify about materials unconstitutionally seized from respondents and which were not relevant to the issues before the court; (2) in failing to grant the motion to dismiss or in concluding that the child was neglected; (3) in finding that a homemade video was made "with the child apparently observing the photographs being videotaped by her father"; (4) (a) in finding that "if the parents have kept their interests and activities private and isolated to themselves, then the children's well-being is not impaired. As it happens, the contrary is the case" and (b) in finding that "[t]he younger child, Jeanne, was taught to call the penis a lolly pop"; (5) in finding that Jeanne "had seen a picture on T.V. at her parents' house which showed a boy's penis"; (6) in concluding that all the findings of fact were supported by clear, cogent, and convincing evidence; and (7) in concluding that respondents' lifestyle created a reasonable likelihood that the neglect would reoccur if the children were placed back in the respondents' care.

[1] Respondents make three arguments pertaining to their first assignment of error. First, respondents argue that the Sheriff's Department had a duty to return to respondents all the seized videotapes and other material after the criminal charges had been dismissed. Respondents cite no North Carolina case law on point. They argue, however, that the North Carolina Constitution prohibits the State from depriving a person of property. Respondents further cite N.C. Gen. Stat. § 15A-258 (1988) which provides that seized materials shall be held by the person applying for or executing the search warrant, or the agency by whom that person is employed, or any other law enforcement agency or person for evaluation or analysis, unless the court orders the materials to be retained by the court or delivered to another court. Respondents argue that DSS is not a law enforcement agency and that the transfer of goods was not permitted under § 15A-258. Since the materials were illegally held and transferred, respondents argue, the materials were inadmissible as evidence in the termination of parental rights hearing. We are unpersuaded by respondents' argument and decline to find that the Sheriff's Department acted unconstitutionally or illegally in transferring the materials to DSS. In support of our conclusion, we note that there is nothing in the record or briefs to indicate that respondents ever requested that the materials be returned. We further note that even if the materials had been returned immediately after respondents' release,

DSS could have obtained the materials for use in the TPR hearing by way of subpoena.

[2]   Second, respondents argue that DSS should not have been permitted to bring all 1,100 alleged sexual videotapes into the courtroom because not all the tapes had been viewed by a DSS caseworker, some of the tapes did not involve sexual subject matter, and some of the tapes were mislabeled. Permitting all the videotapes to be placed in the courtroom, respondents argue, overwhelmed the trial court, thereby prejudicing respondents. We disagree. In a bench trial, it is presumed that the judge disregarded any incompetent evidence. *In re Paul*, 84 N.C. App. 491, 497, 353 S.E.2d 254, 258, *cert. denied*, 319 N.C. 673, 356 S.E.2d 779 (1987), *cert. denied*, 484 U.S. 1004, 98 L.Ed.2d 646 (1988). The trial court found that the Sheriff's deputies had seized "[a]pproximately 1,100 videotapes of various movies, including a catalog of the tapes, with a substantial number of the tapes being titled and cataloged consistent with explicitly sexual themes, especially sexual bondage." The trial court's finding of fact does not focus on the actual content of the videotapes, but rather the labeling of the videotapes. The finding of fact is not dependent upon the number of videotapes actually viewed by the DSS caseworker. Respondents' argument is without merit.

[3]   Third, respondents argue that the materials were irrelevant to the TPR hearing. Respondents rely upon the testimony of DSS caseworker Lisa Greene that all of the videotapes or other sexual material were found in the respondents' bedroom or underneath the respondents' bed and not in the children's bedroom. Since the children did not have access to the materials, respondents argue, the materials were irrelevant to the issue of neglect. Relevant evidence is such evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (1992). In the present case, DSS petitioned the court to terminate parental rights on the grounds of neglect of the minor children. A neglected juvenile is one who "does not receive proper care, supervision . . .; or . . . lives in an environment injurious to his welfare . . . ." N.C. Gen. Stat. § 7A-517(21) (Cum. Supp. 1992). Petitioner argues, and we agree, that the materials were relevant to show the home environment of the children. We find the materials also relevant to show the nature of respondents' supervision of the

children. Madolyn Tyson, a psychologist, testified that Jeanne, the seven-year-old child, told her that in the presence of her parents she had seen two videotapes involving sexually explicit material, including female bondage. In addition, in one of the videotapes made by Jeanne's father and introduced into evidence, Jeanne can clearly be heard asking her father: "What are those girls doing in those pictures. I want to be in those pictures." Respondent answered, "I'll put you in those pictures later." We find the evidence relevant and admissible. Respondents' first assignment of error is overruled.

[4] In their second assignment of error, respondents argue that the trial court erred in failing to grant the motion to dismiss, arguing there was insufficient clear, cogent, and convincing evidence to prove that Jeanne was abused or neglected. Specifically, respondents contend that the prior adjudication of abuse should not be dispositive of the issue of neglect in the TPR hearing. The respondents are correct that in a termination proceeding neglect must be proven by clear, cogent, and convincing evidence, *see In re Matter of Montgomery*, 311 N.C. 101, 316 S.E.2d 246, 252 (1984), and that the trial court may not base a finding of neglect justifying termination of parental rights solely on a prior adjudication of abuse or neglect. *See In the Matter of Ballard*, 311 N.C. 708, 714, 319 S.E.2d 227, 231-32 (1984). Although not determinative of the ultimate issue, a prior adjudication of abuse or neglect is admissible in a termination proceeding. *Id.* at 713-14, 319 S.E.2d at 231.

> The trial court must also consider any evidence of changed conditions in light of the evidence of prior neglect [or abuse] and the probability of a repetition of neglect [or abuse]. The determinative factors must be the best interests of the child and the fitness of the parent to care for the child *at the time of the termination proceeding*. . . .
>
> * * * *
>
> [T]he trial court must admit and consider all evidence of relevant circumstances or events which existed or occurred *either before or after the* prior adjudication of neglect [or abuse].

*Id.* at 715-16, 319 S.E.2d at 232-33 (citations omitted) (emphasis in the original).

In the case at bar, the trial court correctly admitted the prior order adjudicating Jeanne to be an abused juvenile. The order contained detailed findings of fact concerning the abuse. In finding that Jeanne was neglected, the trial court did not rely solely upon the prior adjudication of abuse. It also considered evidence of the circumstances before and after the prior adjudication of abuse. Evidence was presented to the trial court that the respondents had refused to submit to psychological evaluation and treatment and that there was no improvement in the respondents' living and employment conditions from August 1990 to March 1991. Based upon the evidence, the trial court concluded that Jeanne was neglected and that such neglect was likely to reoccur if she were placed back in the care of the respondents. We find no error. Respondents' second assignment of error is without merit.

[5] In their third, fourth, and fifth assignments of error, respondents argue that the trial court erred in making the following findings of fact:

> [15.](e) Among the videotapes found in the respondents' posses-
> sion, was a videotape showing photographs apparently
> cut out from magazines, depicting nude women that
> are bound and gagged. During the course of this video,
> the voice of the child, Jeanne Anne Beck, is recognizable,
> said child asking her father questions as the video is
> being made with the child apparently observing the
> photographs being videotaped by her father.

>           *  *  *  *

> [16.] Mental activity is significant only to the extent that
> it has practical consequences; in other words, what doesn't
> matter, doesn't matter. If the parents have kept their interests
> and activities private and isolated to themselves, then the
> children's well-being is not impaired. As it happens, the con-
> trary is the case. The interest of the respondents — and the
> Court finds no grounds to distinguish between them as to
> this — in seeing women in postures of humiliation and degrada-
> tion, and in simulated situations of torture and rape, finds
> reflection in the respondents' treatment of their girl children.

>           *  *  *  *

> The younger child, Jeanne, was taught to call the penis
> a lolly pop, a type of candy consumed by licking and sucking,

which (in light of her having been made to kiss her father's organ, as to which "he was happy, I was sad) cannot be mere happenstance.

Women are not respected by the respondents, and that attitude is detectable in the way they treated their girl children, Jeanne's burn being perfectly consistent with this analysis. Their obsession with seeing women abused and degraded had an effect on how they treated their children. It was a bad effect, and the Beck household was at the time the petition for termination was taken was an environment injurious to the children's welfare.

\* \* \* \*

19. . . . The child also reported to the psychologist that she had seen a picture on T.V. at her parents' house which showed a boy's penis, or, in the child's terms, "lolly pop," boys with "rubber bands" on their heads, and girls tied up.

We address each finding of fact sequentially. As to finding of fact 15(e), respondents argue that there was no evidence that Jeanne was actually observing the pictures her father was videotaping. A social worker, Lori Reel, testified that she had observed the videotape in question and recalled hearing Jeanne on the videotape ask her father a question such as, "What are those girls doing in those pictures? I want to be in those pictures." She further testified that she recalled Jeanne's father saying, "Don't get on the bed, you are going to mess that up." We find that the trial court could reasonably infer from the evidence that Jeanne had observed the photographs being videotaped by her father. Respondents' argument is without merit.

As to finding of fact 16, respondents argue that (1) there was no evidence they had not kept their interest in bondage to themselves because all the videotapes and materials were found in the respondents' bedroom; and (2) the fact that respondents had a strong interest in sexual bondage was not a basis for finding that such interest had a bad effect on the children or that the environment was injurious to the children's welfare. We disagree. The following evidence was presented to the court. The trial court found that, during a search of the respondents' home, deputies seized (1) approximately 1,100 movies and a catalog of the tapes indicating the tapes had sexually explicit themes; (2) a quantity of photographs

IN RE BECK

[109 N.C. App. 539 (1993)]

of nude women, many being bound and gagged, including photographs of Mrs. Beck; (3) two trunks full of pictures showing, or altered to show, women gagged, tied up, or both; and (4) at least two Barbie-type dolls, both of the dolls being bound and gagged. In addition to the physical evidence, witnesses gave the following testimony. Ms. Reel, a social worker, testified that she heard Jeanne's voice on a homemade sexually explicit videotape. Both Ms. Reel and Dr. Tyson, the psychologist, testified that Jeanne had made statements that she had seen sexually explicit videotapes. Dr. Tyson also testified that Jeanne had stated that in her mother's presence she had kissed her father's "lolly pop" and her mother had laughed. Jeanne also told Dr. Tyson that Jeanne's father had touched and kissed Jeanne's vagina. In addition to the evidence of sexual abuse, there was evidence of physical abuse set forth in the prior order adjudicating Jeanne to be an abused juvenile. In that order the trial court found that Jeanne suffered burns consistent with having been dipped in scalding water. We find ample evidence to support the trial court's correlation between the respondents' interest in sexual bondage and torture and the respondents' treatment of their children. The trial court did not err.

In regard to finding of fact 16, respondents also argue that there was insufficient evidence to support a finding that respondents taught Jeanne to use the term "lolly pop" when referring to a penis. Petitioner concedes, and we agree, that there was no direct evidence that respondents taught her to use the word. If the erroneous finding is deleted, there remains an abundance of clear, cogent, and convincing evidence to support a finding of neglect. We find no prejudicial error.

As to finding of fact 19, respondents argue that there was no evidence presented that Jeanne had seen a sexually explicit movie on television "at her parents' house." Respondents are correct, but we find the error to be harmless. As petitioner argues, the fact that Jeanne saw a sexually explicit movie in her parents' presence is the core of the finding which supports a conclusion that Jeanne was neglected. Where Jeanne saw the movie is irrelevant to the issue of proper care and supervision.

We have reviewed respondents' remaining assignments of error and find them to be merely repetitive and without merit. The order below is

Affirmed.

Judges GREENE and LEWIS concur.