An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-132
NORTH CAROLINA COURT OF APPEALS

Filed: 5 August 2014

IN THE MATTER OF:                      Davidson County
L.E.S.W., I.A.S-W.                     Nos. 11 JT 152
                                             12 JT 8

Appeal by respondent-father from orders entered 6 June 2012 by Judge Carlton Terry and 23 October 2013 by Judge Mary F. Covington in Davidson County District Court. Heard in the Court of Appeals 8 July 2014.

> *Christopher M. Watford, Assistant Davidson County Attorney for appellee Davidson County Department of Social Services.*
>
> *Laura Bodenheimer for Guardian ad litem.*
>
> *J. Thomas Diepenbrock for respondent-appellant father.*

STEELMAN, Judge.

The unchallenged findings of fact in the trial court's permanency planning order support its conclusion that the permanent plan for the children should be termination of father's parental rights and adoption.

## I. Factual and Procedural History

M.S-W. (father) is the father of L.E.S.W. and I.A.S-W., who were born in January and December 2011 respectively. The

children's mother, M.W. (mother), has a lengthy history of untreated substance abuse, unstable housing, and involvement with the Davidson County Department of Social Services (DSS), which is documented in the record. On 8 November 2011 DSS obtained non-secure custody of L.E.S.W. and S.D.P. (another of mother's children), and filed petitions alleging that they were neglected and dependent juveniles. The petitions described the children's exposure to substance abuse by mother, who was then pregnant with I.A.S-W., and to domestic violence between mother and father, and recounted S.D.P.'s disclosure that father abused alcohol. Father attended a Child and Family Team meeting on 14 December 2011, at which DSS explained his case plan. Father was required to "obtain a substance abuse assessment and comply with all recommendations, attend parenting classes, maintain employment, obtain and maintain suitable housing, and attend abuser treatment or anger management classes."

I.A.S-W. was born prematurely in late December 2011, and tested positive for a metabolite of cocaine. On 11 January 2012, DSS filed a juvenile petition alleging that she was neglected and dependent. Based on mother and father's stipulation that the minor children lived "in an environment injurious to their welfare" and were "neglected juveniles as defined by G.S. § 7B-101(15)," the court entered orders on 2 February 2012

adjudicating the children neglected.

An order was entered on 29 February 2012, in which father was directed to attend supervised visitation with the children at least two times per week, obtain a substance abuse assessment and follow any treatment recommendations, complete parenting classes, maintain a source of income, and enter into a Voluntary Support Agreement within 60 days. The court also ordered mother and father to "obtain and maintain a suitable residence for themselves and the minor children[.]"

Judge Terry conducted a permanency planning hearing on 3 May 2012. In an order entered 6 June 2012, the court ceased reunification efforts as to both parents and established a permanent plan of termination of parental rights and adoption for the minor children. DSS filed petitions for termination of father's parental rights on 27 March 2013. Judge Covington conducted a hearing beginning on 29 August 2013, and entered termination orders on 23 October 2013. The court concluded that there were three grounds for termination: (1) father had neglected L.E.S.W. and I.A.S-W.; (2) father had willfully left the children in DSS custody for more than twelve months without showing reasonable progress in correcting the conditions leading to their placement outside the home; and (3) father had willfully failed to pay a reasonable portion of their cost of

care. The court concluded that terminating father's parental rights was in the best interests of the minor children.

Father appeals from the 6 June 2012 permanency planning order directing DSS to cease reunification efforts, and from the termination orders.

## II. Permanency Planning Order

In his sole argument on appeal, father challenges Judge Terry's decision to cease reunification efforts. He asserts that the trial court's order did not comply with the requirements of N.C. Gen. Stat. § 7B-507(b)(1), and that its conclusion was not supported by evidentiary findings or competent evidence. We disagree.

## A. Standard of Review

"A trial court may cease reunification efforts upon making a finding that further efforts 'would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time[.]'" *In re C.M.*, 183 N.C. App. 207, 214, 644 S.E.2d 588, 594 (2007) (quoting N.C. Gen. Stat. § 7B-507(b)(1)). Although characterized by statute as a finding, "the determination that grounds exist to cease reunification efforts under [N.C. Gen. Stat.] § 7B-507(b)(1) is in the nature of a conclusion of law that must be supported by adequate findings of fact." *In re E.G.M.*, __ N.C.

App. __, __, 750 S.E.2d 857, 867 (2013) (citing *In re I.K.*, __ N.C. App. __, __, 742 S.E.2d 588, 595 (2013)).

"This Court reviews an order that ceases reunification efforts to determine whether the trial court made appropriate findings, whether the findings are based upon credible evidence, whether the findings of fact support the trial court's conclusions, and whether the trial court abused its discretion with respect to disposition." *C.M.*, 183 N.C. App. at 213, 644 S.E.2d at 594. "We are bound by the trial court's findings of fact 'where there is some evidence to support those findings, even though the evidence might sustain findings to the contrary.' Findings of fact not challenged on appeal are presumed to be supported by competent evidence and are also binding." *In the Matter of T.J.C.*, __ N.C. App. __, __, 738 S.E.2d 759, 763-64 (quoting *In re Montgomery*, 311 N.C. 101, 110-11, 316 S.E.2d 246, 252-53 (1984), and citing *In re J.K.C. and J.D.K.*, __ N.C. App. __, __ , 721 S.E.2d 264, 268 (2012)), *disc. review denied*, 366 N.C. 592, 743 S.E.2d 194 (2013). In addition, "[a] trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).

## B. Analysis

Father concedes that the permanency planning order includes the requisite statutory language concluding that further efforts to reunify him with the minors "are clearly futile and would be inconsistent with the children's health, safety, and need for a safe, permanent home within a reasonable period of time[.]" However, he contends that this conclusion is not supported by the court's findings of fact or by competent evidence. We disagree.

The trial court's findings of fact include the following:

. . .

22. . . . [Father] entered into a family services case plan with [DSS]. He agreed to obtain and maintain suitable housing for himself and the minor children to reside; obtain and maintain a steady source of income; attend and complete . . . parenting classes; obtain a substance abuse assessment and comply with treatment recommendations; and attend visits with the minor children.

. . .

24. [Father] has resided at various residences since the children came into [DSS's] care. When he and [mother] are on good terms, he lives with her. At other times he lives with relatives. At this time it is unclear exactly where [father] intends to live and what his intentions are for his children.

25. [Father] has been employed . . . since the children came into [DSS's] care.

26. [Father] has not completed parenting classes.

27. [Father] has not obtained a substance abuse assessment.

. . .

29. [Father] has paid nothing in child support and has not entered into any type of Voluntary Support Agreement to date.

30. [Father has] Court ordered visitation with the children two days per week[.] . . . [Father] visits once per week due to his work schedule. He interacts well with the children during his visits but has never visited for more than once a week.

. . . .

33. [DSS] attempted to complete a homestudy on the home of [father]. [DSS's] interpreter contacted [father] on February 10, 2012 and he stated that the relative he was staying with was no longer an option for [L.E.S.W. and I.A.S-W.]

. . . .

41. . . . Neither [father nor mother] has made an improvement in their situation since November of 2011 when the . . . children came into care. . . .

42. The Court would also find that relieving [DSS] from making reasonable efforts with the respondents does not prevent [mother or father] from working their case plans and demonstrating, through their efforts, their desire to reunify with their children.

Father does not dispute the evidentiary support for the court's findings that he had not completed a parenting class, had not obtained suitable housing for himself and the children, had

visited with the children only once a week rather than twice a week as set out in the disposition order, had paid nothing towards the support of his children, and had not entered into a Voluntary Support Agreement. These undisputed findings by themselves establish that father failed to comply with his case plan, and support the trial court's conclusion that DSS should be relieved of further efforts towards reunification.

Father's only challenge to the evidentiary support for the findings is his contention that, because he had obtained a substance abuse assessment the day before the hearing, the court erred by finding that he had not obtained a substance abuse assessment. Petitioner concedes that this assertion is accurate. However, the case plan required him to "obtain a substance abuse assessment <u>and follow any and all treatment recommendations</u>," which he clearly had not done. Therefore, he failed to complete this part of the case plan. Furthermore, given the trial court's other findings, which are not challenged on appeal, any error was harmless. It is well established that "erroneous findings unnecessary to the determination do not constitute reversible error" if the court makes sufficient additional findings grounded in the evidence. *In re Beck*, 109 N.C. App. 539, 548, 428 S.E.2d 232, 238 (1993) (inclusion of erroneous finding in order adjudicating child neglected was immaterial and not

prejudicial given that "[if] the erroneous finding [were] deleted, there remain[ed] an abundance of clear, cogent, and convincing evidence to support a finding of neglect").

Given the family history and father's failure to fully complete any of the requirements of his case plan, the trial court did not abuse its discretion in concluding that further reunification efforts would be clearly futile or inconsistent with the children's need for a safe, permanent home within a reasonable period of time. Accordingly, we affirm the order ceasing reunification efforts.

Father's only challenge to the orders terminating his parental rights is that they were based on an erroneous permanency planning order. Because we have upheld the permanency planning order, the termination orders are also affirmed.

AFFIRMED.

Judges McGEE and ERVIN concur.

Report per Rule 30(e).