IN THE SUPREME COURT OF NORTH CAROLINA

No. 231A19

Filed 3 April 2020

IN THE MATTER OF: K.N.K.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 18 March 2019 by Judge Ward D. Scott in District Court, Buncombe County. This matter was calendared in the Supreme Court on 25 March 2020 and determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*No brief for petitioner-appellee mother.*

*Leslie Rawls for respondent-appellant father.*

NEWBY, Justice.

Respondent, father of the minor child K.N.K. (Kathy),[1] appeals from the trial court's order granting the petition filed by the child's mother (petitioner) for the termination of respondent-father's parental rights. We affirm.

Petitioner and respondent were involved in a relationship from 2010 to 2012 but never married. Kathy was born in December 2011 and has lived with petitioner in Buncombe County, North Carolina since birth. On 25 August 2014, respondent filed a complaint against petitioner with the District Court in Buncombe County,

---

[1] A pseudonym is used to protect the identity of the juvenile and for ease of reading.

seeking joint legal custody of Kathy and visitation. Petitioner obtained a domestic violence protective order (DVPO) against respondent on 27 August 2014 that continued through 12 May 2018; since 12 May 2015, that order has included Kathy as well, excepting only court ordered supervised visitation with respondent.[2] Petitioner filed an answer in the custody matter on 28 October 2014, requesting sole custody of Kathy and attorney's fees.

On the morning of the custody hearing, respondent advised the court he was abandoning his claim for joint custody of Kathy. On 1 June 2015, the trial court awarded petitioner "sole care, custody and control" of Kathy, finding that respondent "failed to take his role and responsibility as a parent of the minor child seriously." The court granted respondent twice monthly supervised visitation with Kathy at the Mediation Center through its Family Visitation Program and invited respondent to "file the appropriate motion before this Court" to modify the order once he "demonstrated the ability to be consistent with the visits" and "demonstrate[d] that

---

[2] Before being served with the custody action, petitioner obtained an *ex parte* DVPO against respondent on 27 August 2014 based on respondent's threatening Facebook posts about petitioner. Respondent then unsuccessfully sought an *ex parte* DVPO against petitioner on 3 September 2014. On 11 September 2014, the trial court transferred the parties' DVPO actions to family court and consolidated them with the custody proceeding. Following a series of continuances, the trial court held a hearing in the consolidated action on 12 May 2015. On 12 May 2015, the trial court granted petitioner a DVPO forbidding respondent to be in the presence of petitioner or Kathy unless otherwise allowed by the court's visitation order in the case. The court subsequently renewed the one-year DVPO for two additional years until 12 May 2018. The court dismissed respondent's DVPO action against petitioner.

he is stable and operating at a higher maturity level . . . ." Respondent was also ordered to pay $4,915.70 in attorney's fees to petitioner's counsel.

On 11 September 2017, petitioner filed a petition to terminate respondent's parental rights. *See* N.C.G.S. §§ 7B-1100, -1104 (2019). After hearing evidence over four dates between 9 July 2018 and 14 November 2018, the trial court entered an order terminating respondent's parental rights on 18 March 2019. In doing so, the court concluded respondent had willfully abandoned Kathy within the meaning of N.C.G.S. § 7B-1111(a)(7) (2019), and such abandonment justified termination. Based on its adjudication, the court proceeded to the dispositional stage of the proceeding under N.C.G.S. § 7B-1110(a) (2019) and determined it was in Kathy's best interest to terminate respondent's parental rights. Respondent appealed. *See* N.C.G.S. § 7B-1001(a1)(1) (2019).

Respondent claims the trial court's findings do not support its adjudication under N.C.G.S. § 7B-1111(a)(7), which authorizes the termination of parental rights if "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition." Respondent also claims the trial court abused its discretion at the dispositional stage of the proceeding by concluding Kathy's best interest would be served by terminating his parental rights.

"We review a trial court's adjudication under N.C.G.S. § 7B-1111 'to determine whether the findings are supported by clear, cogent and convincing evidence and the

findings support the conclusions of law.' " *In re E.H.P.*, 372 N.C. 388, 392, 831 S.E.2d 49, 52 (2019) (quoting *In re Montgomery*, 311 N.C. 101, 111, 316 S.E.2d 246, 253 (1984)); *see also* N.C.G.S. § 7B-1109(f) (2019). Unchallenged findings are deemed to be supported by the evidence and are "binding on appeal." *In re Z.L.W.*, 372 N.C. 432, 437, 831 S.E.2d 62, 65 (2019). "Moreover, we review only those [challenged] findings necessary to support the trial court's determination that grounds existed to terminate respondent's parental rights." *In re T.N.H.*, 372 N.C. 403, 407, 831 S.E.2d 54, 58–59 (2019); *accord In re A.R.A.*, 373 N.C. 190, 195, 835 S.E.2d 417, 421 (2019) (reviewing only the challenged findings necessary to support the trial court's determination that grounds for termination existed).

A court may terminate parental rights if "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition." N.C.G.S. § 7B-1111(a)(7).

> "Abandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child." *In re Young*, 346 N.C. [244,] 251, 485 S.E.2d [612,] 617 [1997] (citation omitted). "[I]f a parent withholds his presence, his love, his care, the opportunity to display filial affection, and willfully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child." *Pratt v. Bishop*, 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962) (citation omitted).

*In re N.D.A.*, 373 N.C. 71, 77, 833 S.E.2d 768, 773 (2019) (alteration in original). The willfulness of a parent's actions is a question of fact for the trial court. *See Pratt*, 257

N.C. at 501, 126 S.E.2d at 608; *see also Stancill v. Stancill*, 241 N.C. App. 529, 531, 773 S.E.2d 890, 892 (2015) ("Where the trial court sits as the finder of fact, and where different reasonable inferences can be drawn from the evidence, the determination of which reasonable inferences shall be drawn is for the trial court." (quoting *Brandon v. Brandon*, 132 N.C. App. 646, 651–52, 513 S.E.2d 589, 593 (1999))). " 'Intent' and 'wilful[l]ness' are mental emotions and attitudes and are seldom capable of direct proof; they must ordinarily be proven by circumstances from which they may be inferred . . . ." *State v. Arnold*, 264 N.C. 348, 349, 141 S.E.2d 473, 474 (1965). "[A]lthough the trial court may consider a parent's conduct outside the six-month window in evaluating a parent's credibility and intentions, the 'determinative' period for adjudicating willful abandonment is the six consecutive months preceding the filing of the petition." *In re N.D.A.*, 373 N.C. at 77, 833 S.E.2d at 773 (quoting *In re D.E.M.*, 257 N.C. App. 618, 619, 810 S.E.2d 375, 378 (2018)).

Here petitioner filed her petition in this case on 11 September 2017. Therefore, respondent's conduct toward Kathy in the period from 11 March 2017 to 11 September 2017 is at issue. *See Young*, 346 N.C. at 251, 485 S.E.2d at 617. The trial court found that, during the determinative period, respondent "has withheld his presence, his love and care, and foregone his opportunities to display his filial affection for the minor child since 2014," and respondent "did have the settled intent to forego all parental responsibility and in fact did forego all of those responsibilities since at least 2014." In concluding respondent "has abandoned the minor child for at

least six (6) months preceding the filing of the Petition in this matter consistent with N.C.G.S. § 7B-1111(a)(7)," the court also expressly found respondent's "conduct was intentional and willful and evinced a settled purpose to forego all parental duties and relinquish all claims to the minor child." This ultimate, dispositive finding must be supported by the evidence and by the evidentiary facts found by the trial court. *See In re N.D.A.*, 373 N.C. at 76–77, 833 S.E.2d at 773.

The trial court's adjudicatory findings show that, from 2014 until the petition's filing date, respondent had no contact or communication of any kind with Kathy; provided no financial support for Kathy;[3] sent Kathy no cards, gifts, or letters; and neither attended nor attempted to attend any of Kathy's medical appointments, educational functions, or extracurricular activities. Moreover, despite having been awarded twice monthly visitation in the 1 June 2016 custody order, respondent did not attend a single visit during the determinative time period; nor did respondent

---

[3] Though evidentiary support exists for the finding, respondent objects to the trial court's reliance on the fact that he failed to provide any financial support for Kathy during the relevant period as a basis to conclude he willfully abandoned the child. Because he received Social Security Disability Income (SSDI) benefits, respondent contends the court's finding improperly "suggests" he could provide support for Kathy.

Notwithstanding respondent's disability, the trial court could consider that he contributed nothing toward Kathy's support and maintenance since 2014, despite having at least some income. Respondent testified that he earned additional income in 2016 and 2017 playing semi-professional football, that he declined a professional football contract worth $524,000.00 in 2018 to remain close to Kathy, and that he had been working full-time since June 2018, all while collecting SSDI benefits. Even without this finding, we conclude that the court would have reached the same conclusion about respondent's willful abandonment of Kathy.

return to court to attempt to modify the terms of the custody order. The trial court also found that respondent "has always had the ability to visit the minor child, and knowingly and willing[ly] chose not to visit the minor child" and "not to have any contact with the minor child."

The trial court's findings show respondent's complete lack of involvement with Kathy, not only during the determinative six-month period, but dating back to 2014. We hold these facts support the court's ultimate findings that respondent acted willfully and with an intention to forego his parental responsibilities to Kathy. Having reviewed the trial court's evidentiary findings, we find no merit to respondent's arguments challenging the court's ultimate findings and conclusion that, by withholding his presence, love, care, and filial affection from Kathy, he willfully abandoned the minor child during the six months preceding petitioner's filing of the petition. Respondent's actions both prior to and during the determinative six-month period support a reasonable inference of willfulness for purposes of N.C.G.S. § 7B-1111(a)(7). *See In re E.H.P.*, 372 N.C. at 394, 831 S.E.2d at 53.

While respondent challenges several of the court's evidentiary findings, each of these contested findings concern his actions outside the six-month period from 11 March 2017 to 11 September 2017. The evidence shows respondent began attending visitations at the Mediation Center on 6 January 2018, well outside the relevant time period. After his second hour-long visit with Kathy on 20 January 2018, respondent "discontinued" his participation in the Family Visitation Program and did not resume

visitations until 28 April 2018.[4] Respondent's 28 April 2018 visitation was cancelled because he attempted to bring his twelve-year-old daughter to the visit without permission. Thereafter and up to the time of the termination hearing, respondent attended all but two of his scheduled visitations, except for two visits cancelled by petitioner during this period. Respondent challenges the trial court's findings that the totality of his behavior with regard to visitations in 2018 "clearly demonstrate[s] to this Court his entire lack of interest in parenting [Kathy]" and "is entirely contrary to his testimony before this Court how pained he has been by not seeing the minor child" during the several preceding years.

---

[4] Respondent informed the visitation monitor that he "w[ould] be out of town for several months starting 2/1/2018." Respondent testified that he was unable to visit Kathy during that period because he was pursuing a professional football career with the Miami Dolphins. The trial court made detailed findings to explain why it found respondent's testimony about his football career, and his whereabouts from January to May 2018, not credible. The Mediation Center's Client Services Coordinator confirmed to respondent by letter dated 24 January 2018 "that supervised visitation services between you and your minor child at the Family Visitation Program were discontinued effective January 20, 2018 . . . . at your request."

Respondent asserts the trial court erroneously implied a connection between an "incident" which occurred at his second visit with Kathy on 20 January 2018 and his decision to discontinue visitations from 20 January 2018 until 28 April 2018. The Mediation Center's records show no incident during this visit. The report from the 20 January 2018 visit shows only that respondent asked the staff to record that Kathy was transported to and from the visitation by petitioner's husband rather than petitioner. At respondent's next scheduled visit on 28 April 2018, however, police were called to the Mediation Center after respondent refused to leave the premises and tried to enter an unauthorized area to locate Kathy. Regardless, the trial court could reasonably infer from defendant's prolonged absence from 20 January 2018 to 28 April 2018 that defendant willfully discontinued his twice monthly visitation rights.

There exists an evidentiary basis for the trial court's assessment that respondent's actions in 2018 did not demonstrate a commitment to parenting Kathy or an equivalent focus on the needs and well-being of the minor child. While the record shows respondent's visits with six-year-old Kathy were affectionate and positive, their activities together did not progress beyond playing video or board games. Regardless, any error in these findings is harmless and had no impact on the court's adjudication because they occurred in 2018 after the petition was filed and well outside the determinative time period. *See In re Beck*, 109 N.C. App. 539, 548, 428 S.E.2d 232, 238 (1993) (upholding trial court's adjudication of grounds to terminate parental rights for neglect where, "[i]f the erroneous finding is deleted, there remains an abundance of clear, cogent, and convincing evidence to support the finding of neglect").

Finally, respondent contends the trial court's mistaken reference to abandoned custody "claims" on 12 May 2015 erroneously suggests he also abandoned his claim for visitation with Kathy along with his custody claim. *See generally Clark v. Clark*, 294 N.C. 554, 575–76, 243 S.E.2d 129, 142 (1978) ("Visitation privileges are but a lesser degree of custody."). The trial court understood respondent's request for visitation. The termination order quotes the portion of the 1 June 2015 custody order that recognized respondent's visitation request and granted respondent twice monthly supervised visitation with Kathy. As discussed above, the trial court clearly based its adjudication decision on the fact that respondent "did not exercise his court

ordered visitation with the minor a single time prior to the petition" being filed on 11 September 2017 rather than the custody proceedings in 2015.

Having concluded that the trial court did not err in its adjudicatory findings and conclusions, we next consider respondent's contentions regarding the dispositional stage. At the dispositional stage, we review the trial court's conclusion that terminating a respondent's parental rights is in the child's best interest only for abuse of discretion. *In re L.M.T.*, 367 N.C. 165, 171, 752 S.E.2d 453, 457 (2013). "An abuse of discretion is a decision manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision." *Briley v. Farabow*, 348 N.C. 537, 547, 501 S.E.2d 649, 656 (1998). The trial court's dispositional findings of fact are reviewed under a "competent evidence" standard. *See In re A.H.*, 250 N.C. App. 546, 565–66, 794 S.E.2d 866, 879–80 (2016), *disc. rev. denied*, 369 N.C. 562, 798 S.E.2d 749 (2017); *cf. Stephens v. Stephens*, 213 N.C App. 495, 503, 715 S.E.2d 168, 174 (2011) ("As long as there is competent evidence to support the trial court's findings, its determination as to the child's best interests cannot be upset absent a manifest abuse of discretion." (quoting *Metz v. Metz*, 138 N.C. App. 538, 541, 530 S.E.2d 79, 81 (2000)).

In determining a juvenile's best interest under N.C.G.S. § 7B-1110(a),

> [t]he court may consider any evidence, including hearsay
> evidence as defined in G.S. 8C-1, Rule 801, that the court
> finds to be relevant, reliable, and necessary to determine
> the best interests of the juvenile. In each case, the court

shall consider the following criteria and make written findings regarding the following that are relevant:

> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.
>
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>
> (4) The bond between the juvenile and the parent.
>
> (5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
>
> (6) Any relevant consideration.

N.C.G.S. § 7B-1110(a)(1)–(6).

The trial court made detailed dispositional findings addressing each of the factors in subsection 7B-1110(a). In addition to recounting respondent's abandonment of Kathy "for years preceding the petition in this matter[,]" the findings describe the six-year-old child's resulting lack of bond with respondent as well as her strong bond with petitioner's husband, who has raised Kathy as his own child and hopes to adopt her. The court's findings portray Kathy as happy, well-loved, and thriving in her current home with petitioner, her husband, and their two-year-old son. The findings also note the opinion of Kathy's guardian *ad litem* (GAL) that it is in Kathy's best interest that respondent's rights be terminated. To the extent respondent does not contest these findings, he is bound thereby. *In re Z.L.W.*, 372

N.C. at 435–36, 831 S.E.2d at 65.

Respondent challenges the following dispositional findings as unsupported by competent evidence:

> c. . . . [T]he minor child is not certain who the Respondent Father is to her and does not consider him a part of her family.
>
> . . . .
>
> e. There is no bond between the juvenile and the Respondent Father.
>
> . . . .
>
> m. While the minor child indicated that she likes the visits with "Tony[,"] the competent evidence is that the minor child plays games with the Respondent Father during her visits, is a content and settled child, but has no bond with the Respondent Father.
>
> o. The conduct of the Respondent Father, as found above, demonstrates that said Respondent will not promote the minor child's physical and emotional well-being.

We agree with respondent that a certain degree of conflict may exist between the finding that Kathy does not view him as part of her family and the GAL's report that Kathy described respondent as "part of her family," even though she did not know how she was related to him. Petitioner testified Kathy had no memory of respondent when their visitations began in January 2018. Thereafter, Kathy told petitioner she liked the games she played during visits but had not otherwise expressed any feelings about respondent. Although the Mediation Center's records

show that Kathy told petitioner she "got to see daddy" following her initial visit with respondent on 6 January 2018, the visitation monitor had referred to respondent as "[y]our dad" to Kathy at the beginning of this visit. Records from subsequent visits show Kathy calling respondent by his first name, "Tony," despite respondent referring to himself as her "daddy" during the visits. After each of their two most recent visits on 26 September 2018 and 10 October 2018, respondent voiced his concern to the visitation monitor that Kathy continued to call him by his first name.

While the trial court found the lack of *any* bond between respondent and Kathy, the evidence supports a finding of no *parent-child* bond between them. The GAL's written report to the trial court, the visitation records of the Mediation Center, and petitioner's testimony largely support the contested findings. We find significant Kathy's statement to the GAL that "she had only one father[,]" petitioner's husband.

Competent evidence also supports the trial court's finding that respondent's conduct indicates he "will not promote [Kathy's] physical and emotional well-being" should he retain his parental rights. As the trier of fact, the trial court could reasonably draw this inference based on respondent's abandonment of his daughter over a period of several years before petitioner filed her petition to terminate his rights and his irregular attendance at visitations in response to petitioner's filing. As made plain in its findings, the court considered respondent's testimony about his prior conduct toward Kathy demonstrably false and self-serving. Based on this evidence, the court found respondent's averments "as to his future intentions with

this minor child . . . not credible."

We hold the trial court did not abuse its discretion in concluding that Kathy's best interest would be served by the termination of respondent's parental rights. The court's findings demonstrate its careful consideration of the dispositional factors prescribed in N.C.G.S. § 7B-1110(a), including the strong bond between Kathy and petitioner's husband, his intention to adopt Kathy, and the loving home environment petitioner and her husband created for Kathy and their young son. That assessment accords with the GAL's recommendation that respondent's rights be terminated.

Lastly, respondent cites a series of cases recognizing a presumption in favor of the child's biological parents in matters related to child custody. *See, e.g.*, *Petersen v. Rogers*, 337 N.C. 397, 403–04, 445 S.E.2d 901, 905 (1994). Nonetheless, this reliance on *Petersen* and like cases in which the parents were not shown to have acted inconsistently with their constitutionally-protected status is unavailing. While this Court has long recognized "the constitutionally-protected paramount right of parents to custody, care, and control of their children," *id.* at 406, 445 S.E.2d at 905, it is also well-established, however, that "[a] parent loses this paramount interest if he or she is found to be unfit or acts inconsistently 'with his or her constitutionally protected status,'" *Boseman v. Jarrell*, 364 N.C. 537, 549, 704 S.E.2d 494, 503 (2010) (quoting *David N. v. Jason N.*, 359 N.C. 303, 307, 608 S.E.2d 751, 753 (2005)). Once a parent has forfeited his constitutionally protected status, issues related to child custody are determined based purely on the child's best interests. *Price v. Howard*, 346 N.C. 68,

79, 484 S.E.2d 528, 534–35 (1997).

An adjudication of grounds for terminating parental rights under N.C.G.S. § 7B-1111(a) constitutes a determination by the trial court that the respondent-parent is unfit or has acted inconsistently with his constitutionally protected status with regard to the subject juvenile. *See Owenby v. Young*, 357 N.C. 142, 145, 579 S.E.2d 264, 267 (2003) (identifying an adjudication under N.C.G.S. § 7B-1111(a) as one of "at least two methods a court may use to find that a natural parent has forfeited his or her constitutionally protected status"). The dispositional statute thus provides that only "[*a*]*fter an adjudication that one or more grounds for terminating a parent's rights exist*, the court shall determine whether terminating the parent's rights is in the juvenile's best interest." N.C.G.S. § 7B-1110(a) (emphasis added).

Having adjudicated respondent's willful abandonment of Kathy under N.C.G.S. § 7B-1111(a)(7), the trial court was obliged by N.C.G.S. § 7B-1110(a) to determine whether it was in Kathy's best interests to terminate respondent's parental rights, and to do so without regard to any competing interest of respondent. *Cf. Owenby*, 357 N.C. at 146, 579 S.E.2d at 267 ("Once a court determines that a parent has actually engaged in conduct inconsistent with the protected status, the 'best interest of the child test' may be applied without offending the Due Process Clause."). The court undertook the appropriate statutory inquiry and reached a reasoned decision about Kathy's best interest based on the evidence. The trial court's order is affirmed.

AFFIRMED.