WILLIAM B. PETERSEN AND WIFE, PATRICIA T. PETERSEN v. PAMELA A. ROGERS AND WILLIAM J. ROWE

No. 427PA93

(Filed 29 July 1994)

**1. Parent and Child § 24 (NCI4th); Constitutional Law § 119 (NCI4th)— adoption—consent revoked—inquiry into religious beliefs—rights of natural parents**

The trial court correctly ordered an adopted child returned to its biological parents where the trial court found that the biological mother had consistently and continuously attempted to set aside her consent; the male defendant is the biological father and had attempted to legitimate his son on several occasions; a Michigan home study reflects that defendants are fit and appropriate persons to have custody of their son; the son was not eligible for adoption and the rights of his parents have not been terminated;

and there was no finding that defendants had neglected their child's welfare in any way. Absent a finding that parents are unfit or have neglected the welfare of their children, the constitutionally protected paramount right of parents to custody, care, and control of their children must prevail and inquiry into plaintiffs' religious beliefs, if error, was harmless.

**Am Jur 2d, Parent and Child §§ 26, 28.**

**Religion as factor in child custody and visitation cases. 22 ALR4th 971.**

2. **Parent and Child § 28 (NCI4th)— adoption revoked—right to visitation**

The trial court did not err when revoking an adoption and awarding custody of the child to the biological parents by including a conclusion that there should be no visitation with plaintiffs (the adoptive parents) except as may be consented to and approved by defendants. N.C.G.S. § 50-13.1 was not intended to confer upon strangers the right to bring custody or visitation actions against parents of children unrelated to such strangers; such a right would conflict with the constitutionally-protected paramount right of parents to custody, care, and control of their children. Language in *Ray v. Ray*, 103 N.C. App. 790, indicating that the statute changed the paramount right of parents was expressly disavowed.

**Am Jur 2d, Parent and Child § 36.**

**Visitation rights of persons other than natural parents or grandparents. 1 ALR4th 1270.**

Appeal as of right pursuant to N.C.G.S. § 7A-30(1) from a unanimous decision of the Court of Appeals, 111 N.C. App. 712, 433 S.E.2d 770 (1993), reversing an order of custody entered by Hunt (Love), J., on 11 December 1991 in District Court, Orange County. Heard in the Supreme Court 12 April 1994.

*Hassell & Baker, P.A., by Robert A. Hassell, for plaintiff-appellees.*

*Levine, Stewart & Davis, by Donna Ambler Davis, for defendant-appellants.*

PETERSEN v. ROGERS

[337 N.C. 397 (1994)]

PARKER, Justice.

In *In re Adoption of P.E.P.*, 329 N.C. 692, 407 S.E.2d 505 (1991), this Court voided the adoption of the minor child whose custody is the subject of the instant case. We remanded for dismissal of the adoption proceeding, *id.* at 704, 407 S.E.2d at 512, subject to N.C.G.S. § 48-20(c).[1] Placement of the child was originally made by the biological mother, defendant Rogers, with plaintiffs Petersen. Hence, after remand and notice the Orange County Department of Social Services ("DSS") commenced a juvenile proceeding in September 1991 by filing a petition for custody of the child.

In September and October 1991 the trial court entered temporary orders granting custody of the child to DSS, placing him with plaintiffs, and appointing a guardian ad litem. Contemporaneously, plaintiffs filed an action seeking custody of the child. By consent of all parties the temporary orders were continued until trial on the merits of plaintiffs' action for custody. In the meantime plaintiffs also filed in the juvenile proceeding a motion in the cause requesting custody of the child. Later plaintiffs moved that their civil action and the juvenile proceeding be consolidated, and on 7 November 1991 the trial court granted the motion.

The matters were heard beginning 12 November 1991; and on 15 November the court orally ordered return of the child to his biological parents, defendants Rogers and Rowe. By written order entered 11 December 1991 the court denied plaintiffs' request for custody and visitation.

Plaintiffs appealed, and the Court of Appeals limited its discussion to the issue of "the permissible extent of inquiry into religious practices and beliefs of the parties in a child custody proceeding." *Petersen v. Rogers*, 111 N.C. App. 712, 713, 433 S.E.2d 770, 772 (1993). The court found that plaintiffs' right to freedom of religion, as guar-

---

1. The statute provides as follows:

Upon dismissal of an adoption proceeding, the custody of the child shall revert to the county director of social services or licensed child-placing agency having custody immediately before the filing of the petition. If the placement of the child was made by its biological parents directly with the adoptive parents, the director of social services of the county in which the petition was filed shall be notified by the court of such dismissal and said director of social services shall be responsible for taking appropriate action for the protection of the child.

N.C.G.S. § 48-20(c) (1991).

anteed by the federal and state constitutions, was violated by the trial court's extensive inquiry into plaintiffs' religion and remanded "for proceedings free from unwarranted religious inquisition into the beliefs of the parties." *Id.* at 725, 433 S.E.2d at 778.

Defendants appealed to this Court, contending the judgment of the Court of Appeals involved a substantial question arising under the First Amendment of the United States Constitution and Article I, § 13, of the North Carolina Constitution in that it purported "to protect the rights of religious freedom of the Plaintiffs/Appellees, yet ignores that the religious beliefs and practices of the Plaintiffs/Appellees are extremely different from the beliefs of the biological parents, the Defendants/Appellants." Defendants' second contention was that the judgment involved a substantial question arising under the First and Fourteenth Amendments and Article I, §§ 1 and 19, of the North Carolina Constitution in that it deprived defendants of their right to custody and control of their child, including control over his associations. Defendants argued that this issue, raised in the trial tribunal and in their brief in the Court of Appeals, was erroneously ignored by that court. Plaintiffs moved pursuant to Rule 14(b)(2) to dismiss the appeal for lack of a substantial constitutional question, but this Court denied the motion. *Petersen v. Rogers*, 335 N.C. 239, 439 S.E.2d 150 (1993). This Court also granted defendants' petition for discretionary review, *id.*, which set forth the same contentions as the notice of appeal.

[1] For reasons which follow, we conclude that defendants' constitutionally-protected paramount right to custody, care, and control of their child, including control over his associations, outweighed plaintiffs' interests, including their right to freedom of religion. Therefore, inquiry into plaintiffs' religious beliefs, if error, was harmless. Consequently, we reverse the decision of the Court of Appeals.

Discussing protection of the family unit, the United States Supreme Court has said:

> The rights to conceive and to raise one's children have been deemed "essential," *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923), "basic civil rights of man," *Skinner v. Oklahoma*, 316 U.S. 535, 541 (1942), and "[r]ights far more precious . . . than property rights," *May v. Anderson*, 345 U.S. 528, 533 (1953). "*It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply*

*nor hinder." Prince v. Massachusetts*, 321 U.S. 158, 166 (1944). The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, *Meyer v. Nebraska, supra*, at 399, the Equal Protection Clause of the Fourteenth Amendment, *Skinner v. Oklahoma, supra*, at 541, and the Ninth Amendment, *Griswold v. Connecticut*, 381 U.S. 479, 496 (1965) (Goldberg, J., concurring).

*Stanley v. Illinois*, 405 U.S. 645, 651, 31 L. Ed. 2d 551, 558-59 (1972) (emphasis added). In *Stanley*, the Court found repugnant to the Due Process and Equal Protection Clauses a state's dependency proceeding in which putative fathers were presumed unfit to raise their children. The Court recognized that under Illinois law

> legal custody is not parenthood or adoption. A person appointed guardian in an action for custody and control is subject to removal at any time without such cause as must be shown in a neglect proceeding against a parent. He may not take the children out of the jurisdiction without the court's approval. He may be required to report to the court as to his disposition of the children's affairs. Obviously then, even if [the putative father] were a mere step away from "custody and control," to give an unwed father only "custody and control" would still be to leave him seriously prejudiced by reason of his status.

*Id.* at 648-49, 31 L. Ed. 2d at 557 (citations omitted). The Court concluded that the interest of the State in caring for children of a putative father is de minimis if the father "is shown to be a fit father." *Id.* at 657-58, 31 L. Ed. 2d at 562.

Recently the Court revisited the question of parental rights, stating as follows:

> "The best interests of the child," a venerable phrase familiar from divorce proceedings, is a proper and feasible criterion for making the decision as to which of two parents will be accorded custody. But it is not traditionally the sole criterion—much less the sole *constitutional* criterion—for other, less narrowly channeled judgments involving children, where their interests conflict in varying degrees with the interests of others. Even if it were shown, for example, that a particular couple desirous of adopting a child would *best* provide for the child's welfare, the child would nonetheless not be removed from the custody of its parents so long as they were providing for the child *adequately*. Similarly,

> "the best interests of the child" is not the legal standard that governs parents' or guardians' exercise of their custody: so long as certain minimum requirements of child care are met, the interests of the child may be subordinated to the interests of other children, or indeed even to the interests of the parents or guardians themselves.

*Reno v. Flores*, —— U.S. ——, ——, 123 L. Ed. 2d 1, 18 (1993) (citation omitted).

North Carolina's recognition of the paramount right of parents to custody, care, and nurture of their children antedates the constitutional protections set forth in *Stanley*. In cases involving conflict over custody this Court has repeatedly emphasized the strength and importance of the right. In *Jolly v. Queen*, 264 N.C. 711, 142 S.E.2d 592 (1965), a mother and putative father disputed who should have custody of their child. The trial court found (i) both parties and their spouses were fit and suitable persons to have care and custody of the child and (ii) it was in the child's best interest that custody be awarded to his putative father for the nine months of the school year and to his mother for the other three months, with visitation privileges for each parent during the other's custody interval. On appeal, speaking for a unanimous court, Justice Sharp said as follows:

> "It is well settled law in this State, and it seems to be universally so held, that the mother of an illegitimate child is its natural guardian, and, as such, has the legal right to its custody, care and control, if a suitable person, even though others may offer more material advantages in life for the child." *Browning v. Humphrey*, 241 N.C. 285, 287, 84 S.E.2d 917, 918; *accord, Wall v. Hardee*, 240 N.C. 465, 82 S.E.2d 370; *In re Cranford*, 231 N.C. 91, 56 S.E.2d 35; *In re McGraw*, 228 N.C. 46, 44 S.E.2d 349; *In re Foster*, 209 N.C. 489, 183 S.E. 744; *In re Shelton*, 203 N.C. 75, 164 S.E. 332; *In re Jones*, 153 N.C. 312, 69 S.E. 217; 10 Am. Jur. 2d, *Bastards* § 60 (1963); 3 Lee, *North Carolina Family Law* § 224 (3d ed. 1963).

*Id.* at 713-14, 142 S.E.2d at 595. Justice Sharp also stated that having found the mother fit, the trial court could not award custody to the putative father. Further, "[t]he mother being of good character and able to provide for her child, *the finding of the judge that it is in the best interest of the child that he remain in the home of respondents for nine months during the year is not controlling.*" *Id.* at 715, 142 S.E.2d at 596 (emphasis added). The Court's examination of the para-

PETERSEN v. ROGERS

[337 N.C. 397 (1994)]

mount custody right of the mother of an illegitimate child illustrates the strength of the right of natural parents as against others: Although a trial court "might find it to be in the best interest of a legitimate child of poor but honest, industrious parents" that his custody be given to a more affluent person, such a finding "could not confer a right as against such parents who had not abandoned their child, even though they had permitted him to spend much time" with the more affluent person. *Id.* Instead, "parents' paramount right to custody would yield only to a finding that they were unfit custodians because of bad character or other, special circumstances. So it is with the paramount right of an illegitimate's mother." *Id.* at 715-16, 142 S.E.2d at 596.

In a case decided before *Jolly*, the Court discussed the common-law basis for parents' paramount right to custody: "Because the law presumes parents will perform their obligations to their children, it presumes their prior right to custody, but this is not an absolute right. The welfare of the child is the crucial test. *When a parent neglects the welfare and interest of his child, he waives his usual right to custody.*" *In re Hughes*, 254 N.C. 434, 436-37, 119 S.E.2d 189, 191 (1961) (emphasis added).

Similarly, the Court of Appeals, after *Stanley*, recognized that parents' paramount right to custody includes the right to control their children's associations: "So long as parents retain lawful custody of their minor children, they retain the prerogative to determine with whom their children shall associate." *Acker v. Barnes*, 33 N.C. App. 750, 752, 236 S.E.2d 715, 716, *disc. rev. denied*, 293 N.C. 360, 238 S.E.2d 149 (1977); *accord Moore v. Moore*, 89 N.C. App. 351, 365 S.E.2d 662 (1988).

Citing *Best v. Best*, 81 N.C. App. 337, 344 S.E.2d 363 (1986), plaintiffs argue that "North Carolina recognizes the right of a minor child to be placed in the custody of the person or entity which will meet that child's best interests." Further, plaintiffs argue that as to parents' custodial rights, our law recognizes no more than a "higher evidentiary standard" which must apply in custody disputes between parents and those who are not natural parents; but "the welfare of the child is paramount to all common law preferential rights of the parents." In light of *Flores*, *Stanley*, and the principles enunciated in *Jolly* and *Hughes*, we explicitly reject these arguments. We hold that absent a finding that parents (i) are unfit or (ii) have neglected the welfare of their children, the constitutionally-protected paramount

right of parents to custody, care, and control of their children must prevail. Language to the contrary in *Best v. Best*, 81 N.C. App. at 342, 344 S.E.2d at 367, is hereby expressly disavowed.

In the instant case, the trial court's findings included the following:

11. [Defendant] Pamela Rogers has since November, 1988 consistently and continuously attempted to set aside her consent to give up her child for adoption.

12. [Defendant] William Rowe is a resident of Michigan who has never been a resident nor a visitor to North Carolina, except to answer these court proceedings which attempted to set aside his parental rights. William Rowe has attempted to legitimate his son on several occasions and has never denied the paternity of his child. [Defendant] Pamela Rogers, the mother of this child, has affirmed that William Rowe is the father of this child. William Rowe, nevertheless, subjected himself to a blood test and the blood grouping reflected that the probability that William Rowe is the father of [the child] is 99.92% more likely than an unrelated male in the United States. *William Rowe is the biological father of [this child]*.

. . . .

23. The Michigan home study reflects that [defendants] Rogers and Rowe are fit and appropriate persons to have custody of their son [name omitted].

. . . .

25. [Name omitted] is a child who is not eligible for adoption; the rights of his parents have not been terminated; and his parents have not consented to any such adoption.

(Emphasis added.)

There was no finding that defendants had neglected their child's welfare in any way. Based on the record, defendants' paramount right to custody of their minor child had to prevail; and the trial court could not award custody to anyone other than defendants. Since as a matter of law the trial court could not award custody to plaintiffs, inquiry into their fitness for purposes of custody was irrelevant. Therefore, error, if any, in the extent of inquiry into this issue was harmless.

**[2]**  Defendants also contend plaintiffs have no right to visitation or to file an action requesting visitation under N.C.G.S. § 50-13.1. We agree.

The statute provides as follows:

> Any parent, relative, or other person, agency, organization or institution claiming the right to custody of a minor child may institute an action or proceeding for the custody of such child, as hereinafter provided. Unless a contrary intent is clear, the word "custody" shall be deemed to include custody or visitation or both.

N.C.G.S. § 50-13.1(a) (Supp. 1993).

The Court of Appeals considered the application of this statute in *Ray v. Ray*, 103 N.C. App. 790, 407 S.E.2d 592 (1991). In *Ray*, plaintiff, the paternal step-grandmother of a minor child, sought visitation and named as defendants the child's biological parents, who were married but living apart. The trial court granted defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6). The trial court's order included the following reasoning:

> The Court has considered the argument of counsel for plaintiff that allowing an amendment to the pleadings to claim a specific "right" to visitation under 50-13.1 would remedy any defect in her pleadings; and specifically rejects plaintiff's argument that the legislature intended to overturn the general case law which asserts that, with specific statutory exceptions, the parents with lawful custody of a child have the prerogative of determining with whom their children shall associate (*Moore v. Moore*, 89 N.C. App. 351).

> The legislature has carved out specific exceptions for both "biological grandparents" and "adoptive grandparents," and has made no other exceptions for non-biological, non-adoptive "step-grandparents," particularly where the relationship by affinity has terminated by divorce or, as in this case, by death of the biological relative on whom the affinity depends.

> Nor is the Court persuaded, as counsel for plaintiff argues, that G.S. 50-13.1 was ever intended by the legislature to confer upon strangers the right to bring custody or visitation actions against the parents of children unrelated to [those strangers].

Such an interpretation would nullify any need for G.S. 50-13.2(b1) and 50-13.2A, neither of which [has] been repealed.

*Id.* at 792, 407 S.E.2d at 593.

The Court of Appeals agreed with defendants' argument that North Carolina law grants to parents who have lawful custody of their children the prerogative of determining with whom their children associate. However, the court held that by changing N.C.G.S. § 50-13.1(a) so that it included the right to bring an action for visitation, the legislature changed the law of *Acker v. Barnes* and *Moore v. Moore.* The court stated, "We note that this subject may involve constitutional issues relating to the substantive due process interests in the care and custody of one's children. As neither party has brought the issue before this Court, we do not address it." *Id.* at 793, 407 S.E.2d at 593-94. Concurring separately, Judge Eagles emphasized "that the amended version of G.S. 50-13.1 undermines the traditional prerogative of parents to determine with whom their minor children associate. In my view, the Legislature did not intend this result when it amended the statute." *Id.* at 794, 407 S.E.2d at 594.

We agree with the reasoning of the trial court in *Ray* that N.C.G.S. § 50-13.1 was not intended to confer upon strangers the right to bring custody or visitation actions against parents of children unrelated to such strangers. Such a right would conflict with the constitutionally-protected paramount right of parents to custody, care, and control of their children. For these reasons, we expressly disavow language in *Ray* indicating that the statute changed the paramount right of parents.

In the instant case, the trial court's order awarding custody included a conclusion that there should be no visitation with plaintiffs "except as may be consented to and approved by [defendants]." Since this conclusion manifestly accords with law protecting parents' constitutionally paramount right to custody, care, and control of their children, the trial court did not err in reaching it.

Accordingly, the Court of Appeals' decision is reversed and this case remanded to that court for further remand to the District Court, Orange County, for reinstatement of the trial court's order.

REVERSED.