DAVIS, Judge.
*59 A.M. ("Respondent-mother") appeals from the trial court's permanency planning order prohibiting contact between her child, M.M. ("Margo"),[1] and Margo's maternal grandfather (the "maternal grandfather"). After *223 careful review, we vacate in part and remand for further proceedings.
Factual Background
This is Respondent-mother's third appeal in this matter. Margo was first removed from the custody of Respondent-mother and Margo's father[2] on 8 August 2007 based on confirmed drug use by the parents and following multiple incidents of domestic violence in their home. In re M.M. , 212 N.C.App. 420, 713 S.E.2d 790, 2011 WL 2206655 (2011) (unpublished). Margo was adjudicated dependent on 17 January 2008 and taken into the custody of the Cumberland County Department of Social Services ("DSS"). Margo was returned to her parents' custody several months later but was removed again in 2010.
On 16 April 2010, the trial court entered a review order in which it ordered that Margo be returned from Michigan, where she had been living with her paternal grandparents, and placed back into DSS custody. After review hearings conducted on 1 July 2010 and 22 July 2010, the trial court entered a permanency planning order on 21 September 2010 *60 granting custody of Margo to her paternal grandparents and allowing visitation and telephone calls with her parents.
Respondent-mother appealed the 21 September 2010 order. This Court reversed, concluding that "the trial court entered its order based solely on the written reports of [DSS] and the guardian ad litem, prior court orders, and documentary evidence." M.M. , 2011 WL 2206655 at *3. The trial court did not hear testimony from either Respondent-mother or Margo's father, and DSS did not offer any competent witness testimony. As a result, we held that the trial court's findings of fact were not adequately supported by the evidence. Id. On remand, the trial court entered a "corrected" permanency planning order on 11 July 2012 continuing legal and physical custody of Margo with her paternal grandparents.
On 18 December 2012, the trial court entered a permanency planning order granting joint legal and physical custody of Margo to her parents with her father having primary physical custody and Respondent-mother exercising secondary physical custody.[3] However, following another review hearing, the trial court entered a new permanency planning order on 11 February 2013 and a "corrected" order on 24 April 2013 (collectively the "2013 Orders"), which returned custody and guardianship of Margo to the paternal grandparents and purported to transfer jurisdiction over the case to the state of Michigan. Respondent-mother once again appealed.
On 5 November 2013, this Court reversed the 2013 Orders in their entirety. In addition to rejecting the trial court's attempt to transfer jurisdiction, we held that the trial court's findings were inadequate under N.C. Gen. Stat. § 7B-907(b) to support its determination that a permanent plan of guardianship with Margo's paternal grandparents-rather than the previously ordered custody with her parents-would serve Margo's best interests. See In re M.M. , 230 N.C.App. 225, 230, 750 S.E.2d 50, 53-54 (2013).
The matter came on for a remand hearing on 10-11 September 2015. Before receiving testimony from Respondent-mother and Margo's paternal grandfather,[4] the trial court ruled that because the 2013 Orders had been reversed, the 18 December 2012 order, which gave joint physical and legal custody of Margo to her parents, remained in effect. The trial *61 court further determined, and the parties agreed, that the only remaining issue before the court was the task of setting a visitation schedule. The trial court proceeded to enter an order on 14 October 2015 reinstating joint legal and physical custody of Margo to her parents and setting out a visitation schedule. The order also directed that there be no contact between Margo and her maternal grandfather. Respondent-mother filed a notice of appeal on 13 November 2015.
Analysis
I. Appellate Jurisdiction
As an initial matter, we must address whether Respondent-mother's appeal is properly *224 before us. In her statement of grounds for appellate review, see N.C.R. App. P. 28(b)(4), Respondent-mother asserts a right of appeal under N.C. Gen. Stat. § 7B-1001(a)(4), arguing that the 14 October 2015 order "changes custody of the minor child." We agree.
Section 7B-1001(a) of our General Statutes provides that only certain juvenile matters may be appealed. Pursuant to N.C. Gen. Stat. § 7B-1001(a)(4), "[a]ny order, other than a nonsecure custody order, that changes legal custody of a juvenile" is appealable. N.C. Gen. Stat. § 7B-1001(a)(4) (2015) ; see In re N.T.S. , 209 N.C.App. 731, 734, 707 S.E.2d 651, 654 (2011) (noting that "[even] a temporary order [that] change[s] legal custody ... [is] immediately appealable under subsection (a)(4)."). "Legal custody refers generally to the right and responsibility to make decisions with important and long-term implications for a child's best interest and welfare." Peters v. Pennington , 210 N.C.App. 1, 17, 707 S.E.2d 724, 736 (2011) (citation and quotation marks omitted). Furthermore, our Supreme Court has noted that "lawful custody ... [includes a parent's] prerogative to determine with whom their children shall associate." Petersen v. Rogers , 337 N.C. 397, 403, 445 S.E.2d 901, 905 (1994) (citation omitted).
The 14 October 2015 order from which Respondent-mother appeals changed the terms of Margo's legal custody as previously established by the 18 December 2012 order. As noted above, the 18 December 2012 order provided that the legal and physical joint custody of Margo was to remain with her parents with her father having primary custody and Respondent-mother having secondary custody. That order did not specifically prohibit contact between Margo and any other individual.
The 14 October 2015 order, however, included among its directives that "the Maternal Grandfather ... shall not be in the presence of or have ANY contact with [Margo] at any time." Thus, because (1) the *62 18 December 2012 order did not prohibit contact between Margo and her maternal grandfather; and (2) legal custody includes "the right to control [one's] children's associations," Petersen , 337 N.C. at 403, 445 S.E.2d at 904-05, the 14 October 2015 order's prohibition on contact between Margo and her maternal grandfather "change[d Respondent-mother's] legal custody of" Margo. Accordingly, this appeal is properly before us pursuant to N.C. Gen. Stat. § 7B-1001(a)(4).
II. "No Contact" Provision
"Appellate review of a permanency planning order is limited to whether there is competent evidence in the record to support the [trial court's] findings and the findings support the conclusions of law." In re P.A. , --- N.C.App. ----, ----, 772 S.E.2d 240, 245 (2015) (citation omitted). "The trial court's findings of fact are conclusive on appeal when supported by any competent evidence, even if the evidence could sustain contrary findings." In re J.H. , --- N.C.App. ----, ----, 780 S.E.2d 228, 238 (2015) (citation and internal quotation marks omitted). "Whether those findings of fact support the trial court's conclusions of law is reviewable de novo ." Carpenter v. Carpenter , 225 N.C.App. 269, 270, 737 S.E.2d 783, 785 (2013) (citation omitted).
On appeal, the only portion of the trial court's 14 October 2015 order Respondent-mother challenges is the "no contact" provision regarding Margo's maternal grandfather. Specifically, Respondent-mother argues there was no competent evidence before the trial court that Margo's maternal grandfather posed a risk to her and that the trial court failed to make any findings regarding why it was in Margo's best interests to prohibit contact with him. We agree.
At the beginning of the 11 September 2015 hearing, the trial court determined that the 18 December 2012 order remained in effect in light of this Court's reversal of the 2013 Orders. At the hearing, the court stated that "the only thing left ... to do is to grant a proper visitation schedule. ... I'm not here to look at whether or not there's [been] a change in circumstances but just to hear evidence in regard to a proper visitation schedule." At one point during the hearing, counsel for Margo's father attempted to offer into evidence a letter from Margo's therapist *225 dated 2 September 2015 in which the therapist discussed, among other things, "[Margo's] relationship with her mom and what areas need to be worked on ... and ... a history of things[.]" However, the trial court responded that "[the letter] gets into areas or issues that are not concerning the parents, or things of that nature; I'm not inclined to review it because there's already an order that joint custody is established. Right now, [the *63 hearing is] just based on visitation." Nevertheless, at the conclusion of the hearing, the trial court ordered that Margo's maternal grandfather was "not to be in [her] presence ... at any time or have any contact with [her]."
However, the trial court's 14 October 2015 order lacks any indication as to the basis upon which the court rested its determination that prohibiting contact with the maternal grandfather was necessary to protect Margo's welfare. There is no mention of the maternal grandfather in either the trial court's findings of fact or conclusions of law, much less any findings that would support the imposition of a "no contact" provision. There was also no competent evidence presented at the hearing tending to show that contact with Margo's maternal grandfather would pose a threat to her well-being or otherwise be contrary to her best interests.
Indeed, DSS concedes that "[Respondent-mother] does correctly point out that there were no findings of fact in the [14 October 2015 order] about the maternal grandfather." Moreover, it acknowledges that "it is true that there was no extensive testimony about the maternal grandfather by any party at the 11 September 2015 hearing."
The trial court may have mistakenly believed that a "no contact" provision from an earlier order remained in effect with regard to Margo's maternal grandfather. However, because that was not, in fact, the case and because the trial court made no new findings of fact that would support such a ruling, we are unable to discern any basis for the "no contact" provision contained in the trial court's 14 October 2015 order.
Conclusion
For the reasons stated above, the portion of the trial court's 14 October 2015 order prohibiting contact between Margo and her maternal grandfather is vacated, and we remand this matter for further proceedings not inconsistent with this opinion.
VACATED IN PART AND REMANDED.
Judges STEPHENS and DIETZ concur.

Pseudonyms and initials are used throughout the opinion to protect the identity of the juvenile and for ease of reading. N.C.R. App. P. 3.1(b).

Margo's father is not a party to the present appeal.

The 18 December 2012 order did not expressly contain any "no contact" provisions.

Margo's father was not present at the hearing due to illness but was represented by counsel.