DILLON, Judge.
 

 *40
 
 Plaintiff Molly Paige Corbett ("Stepmother") commenced this action in district court seeking custody of her stepchildren, "Max" and "Allison,"
 
 [1]
 
 who had been orphaned after the recent death of Stepmother's husband, their father, Jason Corbett.
 
 [2]
 
 On appeal, Plaintiff challenges the district court's order dismissing her
 
 custody
 
 petition in this action due to the award of
 
 guardianship
 
 of the children to Mr. Corbett's sister, Defendant Tracey Lynch ("Aunt"), in a separate superior court proceeding. We affirm.
 

 *41
 
 I. Background
 

 Max and Allison spent their early years living with their biological parents in Ireland, where they are citizens. In 2006, their biological mother passed away. In 2008, Stepmother
 
 *565
 
 traveled from the United States to Ireland to serve as the children's
 
 au pair
 
 . In 2011, Mr. Corbett and Stepmother moved to the United States with the children. Shortly thereafter, Mr. Corbett and Stepmother were married. However, despite Stepmother's desire to adopt Max and Allison, Mr. Corbett did not consent to a stepparent adoption. In 2015, Mr. Corbett died, leaving Max and Allison orphaned. In his will, Mr. Corbett named Aunt and Aunt's husband as testamentary guardians for both minor children.
 

 On 4 August 2015, Stepmother filed a petition for guardianship and a petition for stepparent adoption in superior court.
 

 The following day, on 5 August 2015, Stepmother filed
 
 this action
 
 in district court for custody of the children, pursuant to
 
 N.C. Gen. Stat. § 50-13.5
 
 . Stepmother obtained an
 
 ex parte
 
 order for temporary emergency custody pursuant to
 
 N.C. Gen. Stat. § 50-13.5
 
 (d)(3), based on her allegation that Aunt was coming to the United States to take the children back to Ireland with her.
 

 On 7 August 2015, Aunt filed (1) applications for guardianship of the children in the proceeding before the clerk of superior court and (2) an answer, motions to dismiss, and a counterclaim for child custody in this district court action.
 

 On 17 August 2015, the clerk of superior court awarded guardianship of Max and Allison to Aunt and her husband.
 
 [3]
 
 Following a hearing in this district court action, the district court dismissed Stepmother's custody complaint based on the clerk's prior award of guardianship. Stepmother timely appealed the district court's dismissal of her custody action.
 

 II. Analysis
 

 On appeal, Stepmother argues that the district court erred in granting Aunt's motion to dismiss her Chapter 50 custody action, contending that the district court did, in fact, have subject matter jurisdiction. The resolution of this matter requires this Court to consider the jurisdictional relationship between Chapter 35A guardianship proceedings before a clerk of superior court and a Chapter 50 custody action before a district
 
 *42
 
 court judge. We conclude that the appointment of a general guardian by the clerk of superior court in the Chapter 35A guardianship proceeding rendered Stepmother's Chapter 50 custody action moot. Therefore, we affirm the district court's order dismissing Stepmother's Chapter 50 custody petition.
 

 Our guardianship statutes, codified in Chapter 35A, allow "any person or corporation, including any State or local human services agency[,]" to file an application with the clerk of superior court "for the appointment of a guardian of the person or general guardian
 
 for any minor who [does not have a] natural guardian
 
 ."
 
 [4]
 
 N.C. Gen. Stat. § 35A-1221 (2015) (emphasis added).
 
 [5]
 
 In such proceeding, the clerk conducts a hearing to determine whether the appointment of a guardian is required, and, if so, considers the child's best interest in determining who the guardian(s) should be. N.C. Gen. Stat. § 35A-1223. An award of general guardianship entitles the guardian to
 
 custody
 
 of the child. N.C. Gen. Stat. § 35A-1241(a)(1).
 

 Chapter 50, on the other hand, provides the
 
 district court
 
 with jurisdiction to enter orders providing for the
 
 custody
 
 of a minor child.
 
 N.C. Gen. Stat. § 50-13.5
 
 (c)(2) (2015). Any "parent, relative, or other person, agency, organization or institution claiming the right to custody of a minor child may institute an action or proceeding for the custody of such child."
 
 N.C. Gen. Stat. § 50-13.1
 
 . Chapter 50 custody actions generally involve a dispute between two parents
 
 or
 
 between the parent(s) and a non-parent. In certain
 
 *566
 
 emergency situations, the district court is authorized to enter a temporary child custody order
 
 ex parte,
 
 for example, when "there is a substantial risk that the child may be abducted or removed from the State of North Carolina for the purpose of evading the jurisdiction of North Carolina courts."
 
 N.C. Gen. Stat. § 50-13.5
 
 (d)(3).
 

 Our Supreme Court has stated that parents, as "natural guardians," have a "constitutionally-protected paramount right [ ] to custody, care, and control of their children."
 
 Petersen v. Rogers
 
 ,
 
 337 N.C. 397
 
 , 406,
 
 445 S.E.2d 901
 
 , 906 (1994). And if a person is appointed as the "general
 
 *43
 
 guardian" or as "guardian of the person" of a minor child, that guardianship necessarily includes physical custody of the minor.
 
 See
 
 N.C. Gen. Stat. § 35A-1202(10) (" 'Guardian of the person' means a guardian appointed ... for the purpose of performing duties relating to the ... custody ... of a ward."). This relationship between guardianship and custody was articulated by the Supreme Court of Rhode Island as follows:
 

 Permanent custody, so called, with its attendant responsibilities, is an incident of guardianship and parents are the natural guardians of their children. ... Where, as here, a child has been orphaned, the appointment of a guardian supersedes that of a custodian since the latter is contained within the former.
 

 Petition of Loudin
 
 ,
 
 101 R.I. 35
 
 , 38-39,
 
 219 A.2d 915
 
 , 917-18 (1966) (internal citations omitted).
 

 Our General Assembly has generally followed the logic articulated in
 
 Loudin
 
 in crafting our custody and guardianship laws. Indeed, our statutes provide for an override of a Chapter 50 custody determination by the appointment of a general guardian or guardian of the person: Chapter 35A allows for an eligible party to obtain guardianship of a minor child with no living parents even if the issue of the child's custody has
 
 already been resolved
 
 by the district court in a Chapter 50 custody proceeding. Chapter 35A provides that an applicant for guardianship is to include "a copy of any ... custody order" for the clerk's consideration in making a decision regarding guardianship of the child. N.C. Gen. Stat. § 35A-1221(4).
 

 Following appointment of a guardian, Chapter 35A provides that "[t]he clerk shall retain jurisdiction ... in order to assure compliance with the clerk's orders and those of the superior court." N.C. Gen. Stat. § 35A-1203(b). In addition, the clerk retains jurisdiction to "determine disputes between guardians." N.C. Gen. Stat. § 35A-1203(c). Indeed, we have held that in the context of a dispute over the custody of an incompetent adult child, "the district court obtains jurisdiction ... to determine custody only when the disabled adult child at issue has not been declared incompetent and had a guardian appointed."
 
 McKoy v. McKoy
 
 ,
 
 202 N.C.App. 509
 
 , 515,
 
 689 S.E.2d 590
 
 , 594 (2010). In
 
 McKoy
 
 , we also held that "the clerk of superior court is the proper forum for determining custody disputes regarding a person previously adjudicated an incompetent adult and who has been provided a guardian under Chapter 35A."
 
 Id.
 
 at 513,
 
 689 S.E.2d at 593
 
 .
 

 *44
 
 Thus, in the present case, the clerk properly exercised jurisdiction under Chapter 35A to consider the application for guardianship of Max and Allison, as the children had no natural guardian. The clerk's jurisdiction was not divested by the
 
 ex
 

 parte
 
 temporary custody order already entered by the district court because Chapter 35A contemplates the clerk giving due consideration of custody awards entered by other courts.
 
 See
 
 N.C. Gen. Stat. § 35A-1221(4) (providing that an application for guardianship is to include a copy of any order awarding custody). Accordingly, the clerk had jurisdiction to appoint Aunt and her husband as general guardians for Max and Allison, an incident of which is physical custody of the children. Thus, any modification of the clerk's guardianship arrangement, including modification of custody, would "require[ ] filing a motion ... with the clerk under Chapter 35A rather than filing an action for custody action in district court under Chapter 50."
 
 McKoy
 
 ,
 
 202 N.C.App. at 511
 
 ,
 
 689 S.E.2d at 592
 
 .
 

 Further, we note that once the clerk of superior court entered the order awarding general guardianship of Max and Allison to Aunt and her husband, the Chapter
 
 *567
 
 50 custody action became moot. A final determination by the district court in Stepmother's Chapter 50 custody action would have no practical effect on the controversy regarding custody of the minor children, as custody was decided as part of the guardianship proceeding.
 
 Roberts v. Madison Cnty. Realtors Ass'n, Inc.
 
 ,
 
 344 N.C. 394
 
 , 398-99,
 
 474 S.E.2d 783
 
 , 787 (1996) ("A case is 'moot' when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy."). The "proper procedure for a court to take upon a determination that a case has become moot is dismissal of the action[.]"
 

 Id.
 

 Accordingly, we conclude that the district court properly dismissed Stepmother's Chapter 50 custody action.
 

 Our holding today, however, does not affect any jurisdiction the district court may have to issue
 
 ex parte
 
 orders under Chapter 50 for temporary custody arrangements where the conditions of
 
 N.C. Gen. Stat. § 50-13.5
 
 (d)(2)-(3) are met.
 
 [6]
 

 AFFIRMED.
 

 Judges BRYANT and STEPHENS concur.
 

 [1]
 

 Pseudonyms.
 

 [2]
 

 Stepmother was indicted for second-degree murder and voluntary manslaughter in connection with Mr. Corbett's death. At the time of this appeal, she is still awaiting trial.
 

 [3]
 

 The guardianship orders entered by the clerk of court were subsequently affirmed by Superior Court Judge Theodore S. Royster on 10 February 2016.
 

 [4]
 

 North Carolina has long recognized that a child's biological mother and father are the "natural guardians" of the child.
 
 See
 

 Bright v. Wilson
 
 ,
 
 1 N.C. 251
 
 , 252 (1800) ;
 
 Buchanan v. Buchanan
 
 ,
 
 207 N.C.App. 112
 
 , 119,
 
 698 S.E.2d 485
 
 , 489 (2010). Adoptive parents, too, are "natural guardians" as they have the same rights to the adopted child as to any child born to them.
 
 N.C. Gen. Stat. § 48-1-106
 
 (c).
 

 [5]
 

 A general guardian is defined as a guardian of both the ward's person and the ward's estate. N.C. Gen. Stat. § 35A-1202(7).
 

 [6]
 

 We note that Chapter 35A does provide the clerk with authority to enter a temporary,
 
 ex parte
 
 custody order when "an emergency exists which threatens [either] the physical well-being of the ward or constitutes a risk of substantial injury to the ward's estate." N.C. Gen. Stat. § 35A-1207.