IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-104

 No. 19A21

 Filed 24 September 2021

 IN THE MATTER OF: D.C.

 Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from order entered on 22

 September 2020 by Judge Christopher B. McLendon in District Court, Martin

 County. This matter was calendared for argument in the Supreme Court on 19

 August 2020 but determined on the record and briefs without oral argument pursuant

 to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

 J. Edward Yeager, Jr., for petitioner-appellee Martin County Department of
 Social Services.

 Carrie A. Hanger for appellee Guardian ad Litem.

 Benjamin J. Kull for respondent-appellant father.

 Garron T. Michael for respondent-appellant mother.

 BERGER, Justice.

¶1 Respondents appeal from the trial court’s order terminating their parental

 rights to D.C. (David).1 We affirm.

 Factual and Procedural Background

¶2 The Martin County Department of Social Services (DSS) filed a petition

 1 A pseudonym is used in this opinion to protect the juvenile’s identity and for ease of

 reading.
 IN RE D.C.

 2021-NCSC-104

 Opinion of the Court

 alleging that David was a neglected and dependent juvenile. Through Child

 Protective Services (CPS), DSS had a history with respondents’ family dating back to

 December 2008. DSS received approximately ten CPS reports from 2008 until the

 filing of the petition. DSS alleged in the petition issues concerning substance abuse,

 injurious environment, and truancy.

¶3 Since April 2017, DSS had been working with respondents’ family trying to

 assist them in obtaining substance abuse treatment and mental health services. DSS

 further asserted that even though respondent-father had completed his

 recommended substance abuse assessment, he failed to disclose his substance abuse

 issues. As a result of respondent-father’s failure to disclose, no services were

 recommended to address substance abuse issues. The day before DSS filed the

 petition, respondent-father was incarcerated.

¶4 In addition, respondent-mother tested positive for cocaine, opioids, and

 marijuana, and was in and out of jail because of probation violations. She was noted

 as being “very resistant” to receiving help with her drug addiction.

¶5 In October 2017, DSS was informed that a probation officer went to

 respondents’ residence, tested respondent-mother for drugs, and conducted a search

 of the location. The probation officer found a young female in a bathroom “getting

 ready to shoot up.” A further search of the home disclosed needles under a bathroom

 sink near David’s bedroom as well as a tourniquet and a spoon. The probation officer
 IN RE D.C.

 2021-NCSC-104

 Opinion of the Court

 also found a needle cap and a used condom in David’s bedroom. One of respondents’

 children told law enforcement that the woman who was found using drugs lived in

 the home and slept in David’s bedroom.

¶6 DSS interviewed respondents while they were both in custody and unable to

 provide for David’s care and supervision. Both respondents were observed with fresh

 “track marks” on their arms. Respondent-father admitted to being addicted to heroin

 and needing long term treatment. Respondent-mother acknowledged that she had a

 problem with drugs. DSS obtained nonsecure custody for David on October 11, 2017.

¶7 David was adjudicated to be a neglected and dependent juvenile based on

 stipulations made by respondents. In a separate dispositional order entered in

 February 2018, the trial court ordered that legal custody remain with DSS and

 granted it placement authority. Respondent-mother was allowed a minimum of two

 hours of supervised visitation every two weeks. The respondents were further

 ordered to work on a plan of reunification.

¶8 A review hearing was held on March 27, 2018. At that time, respondent-

 mother was incarcerated. Respondent-father was out of jail but had criminal charges

 pending. The trial court determined that respondent-father appeared to be impaired

 during one meeting at DSS. Respondent-father completed a psychiatric evaluation

 and was diagnosed with “Opioid Use Disorder, Severe, in Early Remission.” The
 IN RE D.C.

 2021-NCSC-104

 Opinion of the Court

 permanent plan for David was set as reunification. At a subsequent review hearing,

 the trial court set a secondary permanent plan of guardianship.

¶9 The trial court held a permanency planning review hearing in September 2018.

 The trial court found that respondent-mother had missed the majority of her

 Substance Abuse Intensive Outpatient Treatment sessions, missed her appointment

 for her psychological evaluation, had not contacted DSS or visited with David since

 August 2018, and had not started parenting classes. Additionally, respondent-

 mother indicated that she did not wish to work on a plan of reunification and

 approved of David’s current custodians being named his guardians.

¶ 10 The trial court found that respondent-father cancelled a substance abuse

 assessment because he believed his participation in Narcotics Anonymous was

 sufficient, failed to start parenting classes, had not visited David since July 2018,

 failed two drug tests, and did not appear interested in working on a plan of

 reunification. The trial court relieved DSS of further reunification efforts and

 changed the primary permanent plan to guardianship. The trial court subsequently

 changed the primary permanent plan to adoption with a secondary permanent plan

 of guardianship due to ongoing concerns regarding substance abuse. In a

 permanency planning review order entered on December 9, 2019, the trial court

 ordered DSS to file a motion to terminate respondents’ parental rights.

¶ 11 On March 11, 2020, DSS filed a petition to terminate respondents’ parental
 IN RE D.C.

 2021-NCSC-104

 Opinion of the Court

 rights on the grounds of neglect, willful failure to make reasonable progress, failure

 to pay for the cost of care for the juvenile, and dependency. N.C.G.S. § 7B-1111(a)(1)–

 (3), (6) (2019). Following a hearing, the trial court determined that grounds existed

 to terminate respondents’ parental rights as alleged in the petition. The trial court

 further concluded it was in David’s best interests that respondents’ parental rights

 be terminated, and terminated respondents’ parental rights. Respondents appeal.

 Standard of Review

¶ 12 A termination of parental rights proceeding consists of an adjudicatory stage

 and a dispositional stage. N.C.G.S. §§ 7B-1109, -1110 (2019); In re Montgomery, 311

 N.C. 101, 110, 316 S.E.2d 246, 252 (1984). At the adjudicatory stage, the petitioner

 bears the burden of proving by “clear, cogent, and convincing evidence” the existence

 of one or more grounds for termination under section 7B-1111(a) of our General

 Statutes. N.C.G.S. § 7B-1109(f) (2019). We review a trial court’s adjudication “to

 determine whether the findings are supported by clear, cogent and convincing

 evidence and the findings support the conclusions of law.” In re Montgomery, 311

 N.C. at 111, 316 S.E.2d at 253 (citing In re Moore, 306 N.C. 394, 404, 293 S.E.2d 127,

 133 (1982)). If the petitioner meets its burden during the adjudicatory stage, “the

 court proceeds to the dispositional stage, at which the court must consider whether it

 is in the best interests of the juvenile to terminate parental rights.” In re D.L.W., 368

 N.C. 835, 842, 788 S.E.2d 162, 167 (2016) (citing In re Young, 346 N.C. 244, 247, 485
 IN RE D.C.

 2021-NCSC-104

 Opinion of the Court

 S.E.2d 612, 614–15 (1997); N.C.G.S. § 7B-1110).

¶ 13 “[A]n adjudication of any single ground in N.C.G.S. § 7B-1111(a) is sufficient

 to support a termination of parental rights.” In re E.H.P., 372 N.C. 388, 395, 831

 S.E.2d 49, 53 (2019) (citations omitted). We begin our analysis with consideration of

 whether grounds existed pursuant to N.C.G.S. § 7B-1111(a)(3) to terminate

 respondents’ parental rights.

 Analysis

¶ 14 A trial court may terminate parental rights pursuant to N.C.G.S. § 7B-

 1111(a)(3) where:

 The juvenile has been placed in the custody of a county
 department of social services, a licensed child-placing
 agency, a child-caring institution, or a foster home, and the
 parent has for a continuous period of six months
 immediately preceding the filing of the petition or motion
 willfully failed to pay a reasonable portion of the cost of
 care for the juvenile although physically and financially
 able to do so.

 N.C.G.S. § 7B-1111(a)(3) (2019). This Court has stated that:

 The cost of care refers to the amount it costs the
 Department of Social Services to care for the child, namely,
 foster care. A parent is required to pay that portion of the
 cost of foster care for the child that is fair, just and
 equitable based upon the parent’s ability or means to pay.

 In re J.M., 373 N.C. 352, 357, 838 S.E.2d 173, 176–77 (2020) (cleaned up).
 IN RE D.C.

 2021-NCSC-104

 Opinion of the Court

¶ 15 Here, in support of its conclusion that grounds existed pursuant to N.C.G.S.

 § 7B-1111(a)(3) to terminate respondents’ parental rights, the trial court made the

 following findings of fact:

 [16]a. The juvenile has been in the legal custody of [DSS]
 for the past thirty-four (34) months. He is placed in a foster
 home through the foster care system, which entails
 numerous expenses to provide for his case.

 [16]b. Neither respondent-parent has paid any child
 support or given [DSS] or the foster parents any money
 that would pay a reasonable portion of the cost of care for
 the juvenile. The respondent-parents have provided the
 juvenile with some food and gifts at visitation, and also
 given the juvenile some small amount of spending money.

 [16]c. Each parent is physically able to work, although
 there was a period during an unsuccessful pregnancy in
 2018-19 in which respondent-mother could not work. Each
 parent has worked at a lawn care business they started at
 the beginning of 2020.

 16[d]. Each parent is financially able to pay a reasonable
 portion of the cost of care for the juvenile. Respondent-
 mother reports that the lawn care business has been even
 more successful than they envisioned, and they are able to
 earn enough income to support themselves and their
 children.

¶ 16 Respondents do not challenge the trial court’s findings of fact regarding this

 statutory ground.2 See In re T.N.H., 372 N.C. 403, 407, 831 S.E.2d 54, 58 (2019)

 (stating that “[f]indings of fact not challenged by respondent are deemed supported

 2 Respondents make arguments regarding findings of fact 14 and 17, but we do not

 address them because they are not relevant to grounds for termination under N.C.G.S. § 7B-
 1111(a)(3). In re N.G., 374 N.C. 891, 900, 845 S.E.2d 16, 23 (2020).
 IN RE D.C.

 2021-NCSC-104

 Opinion of the Court

 by competent evidence and are binding on appeal.”). Respondents instead claim that

 the trial court failed to make any findings of fact that they had received notice that

 they were under any obligation to make payments to DSS or the foster parents for

 David’s care. Respondents contend that without notice of such obligation, they could

 not have acted willfully. Respondents thus assert that the trial court erred by

 concluding grounds exist to terminate their parental rights pursuant to N.C.G.S. §

 7B-1111(a)(3) because their failure to pay was not willful.

¶ 17 Respondents’ argument is nearly identical to that raised by the respondent-

 mother in In re S.E., 373 N.C. 360, 838 S.E.2d 328 (2020). In In re S.E., the

 respondent-mother conceded that she did not pay anything towards the cost of care

 for her children but similarly claimed that her failure to pay was not willful. The

 respondent argued that she could have paid, but “she did not know she could pay

 towards the cost of care for her children, did not know how to pay towards the cost,

 and could not reasonably have been expected to do so.” Id. at 365, 838 S.E.2d at 332.

 This Court disagreed, holding that:

 Respondent-mother’s argument that she did not know she
 had to pay a reasonable portion of the cost of care for her
 children or how to do so is fundamentally without merit.
 The absence of a court order, notice, or knowledge of a
 requirement to pay support is not a defense to a parent’s
 obligation to pay reasonable costs, because parents have an
 inherent duty to support their children. Given her inherent
 duty to support her children, respondent cannot hide
 behind a cloak of ignorance to assert her failure to pay a
 reasonable portion of the cost of care for her children was
 IN RE D.C.

 2021-NCSC-104

 Opinion of the Court

 not willful.

 Id. at 366, 838 S.E.2d at 333 (cleaned up).

¶ 18 Respondents contend that we should disavow In re S.E. Respondents claim

 that the interpretation of N.C.G.S. § 7B-1111(a)(3) as set forth in In re S.E., when

 compared to termination for lack of support pursuant to N.C.G.S. § 7B-1111(a)(4)3,

 “results in an unconstitutional dichotomy, under which similarly situated parents are

 treated differently depending on who the child’s custodian is.” Respondents argue

 that “the General Assembly could not have possibly intended to hold only some

 parents to a strict liability standard, for doing so would result in an unconstitutional

 outcome in which those parents are deprived of the equal protection of the law.”

¶ 19 Adhering to the principle of stare decisis, we decline to change our

 interpretation of N.C.G.S. § 7B-1111(a)(3). This Court has stated:

 It is . . . an established rule to abide by former precedents,
 stare decisis, where the same points come up again in
 litigation, as well to keep the scale of justice even and
 steady, and not liable to waver with every new judge’s
 opinion, as also because, the law in that case being
 solemnly declared and determined what before was
 uncertain, and perhaps indifferent, is now become a
 permanent rule, which it is not in the breast of any
 subsequent judge to alter or swerve from according to his

 3 Section 7B-1111(a)(4) provides that a trial court may terminate parental rights
 where “[o]ne parent has been awarded custody of the juvenile by judicial decree or has
 custody by agreement of the parents, and the other parent whose parental rights are sought
 to be terminated has for a period of one year or more next preceding the filing of the petition
 or motion willfully failed without justification to pay for the care, support, and education of
 the juvenile, as required by the decree or custody agreement.” N.C.G.S. § 7B-1111(a)(4)
 (2019).
 IN RE D.C.

 2021-NCSC-104

 Opinion of the Court

 private sentiments; he being sworn to determine, not
 according to his private judgment, but according to the
 known laws and customs of the land—not delegated to
 pronounce a new law, but to maintain and expound the old
 one—jus dicere et non jus dare.

 McGill v. Town of Lumberton, 218 N.C. 586, 591, 11 S.E.2d 873, 876 (1940) (cleaned

 up); see also Bacon v. Lee, 353 N.C. 696, 712, 549 S.E.2d 840, 851–52 (2001) (“A

 primary goal of adjudicatory proceedings is the uniform application of law. In

 furtherance of this objective, courts generally consider themselves bound by prior

 precedent, i.e., the doctrine of stare decisis.” (citing Payne v. Tennessee, 501 U.S. 808,

 827, 115 L.Ed.2d 720, 736–37 (1991)).

¶ 20 The trial court’s unchallenged findings of fact demonstrate that respondents

 had the ability to pay a reasonable portion of David’s cost of care but failed to pay any

 amount to DSS or the foster parents toward cost of care. Accordingly, we conclude

 that grounds existed pursuant to N.C.G.S. § 7B-1111(a)(3) to terminate respondents’

 parental rights.

¶ 21 We next consider respondent-father’s argument that the trial court conducted

 the adjudicatory hearing under a fundamental misapprehension of the law.

 Respondent-father claims that the trial court “conducted the adjudication hearing

 under the fundamentally misguided belief that parent and child were adversaries—

 that is, that young David’s interests took priority over his parents’ constitutionally

 protected rights.” See Santosky v. Kramer, 455 U.S. 745, 760, 71 L. Ed. 2d 599, 610
 IN RE D.C.

 2021-NCSC-104

 Opinion of the Court

 (1982) (stating that “[a]t the factfinding, the State cannot presume that a child and

 his parents are adversaries. After the State has established parental unfitness at

 that initial proceeding, the court may assume at the dispositional stage that the

 interests of the child and the natural parents do diverge.”). We are not persuaded.

¶ 22 As noted previously herein, a termination of parental rights proceeding

 consists of two stages, an adjudicatory stage and a dispositional stage. N.C.G.S.

 §§ 7B-1109, -1110 (2019); In re Montgomery, 311 N.C. at 110, 316 S.E.2d at 252. This

 Court has often stated that in proceedings conducted under the North Carolina

 Juvenile Code, the best interests of the juvenile are paramount. See, e.g., In re T.H.T.,

 362 N.C. 446, 450, 665 S.E.2d 54, 57 (2008) (affirming that the child’s best interests

 constitute “the ‘polar star’ of the North Carolina Juvenile Code”); see also In re

 Montgomery, 311 N.C. at 109, 316 S.E.2d at 246. However, a trial court only proceeds

 to “the dispositional stage at which point it must determine whether terminating the

 parent’s rights is in the juvenile’s best interests” after it “determines at the

 adjudicatory stage that one or more of the grounds in N.C.G.S. § 7B-1111(a) exists to

 terminate parental rights.” In re K.L.M., 375 N.C. 118, 121, 846 S.E.2d 488, 490

 (2020). Thus, until the trial court has concluded at the adjudicatory stage that a

 ground exists to terminate parental rights, “the constitutionally[ ]protected

 paramount right of parents to custody, care, and control of their children must

 prevail.” Petersen v. Rogers, 337 N.C. 397, 403–04, 445 S.E.2d 901, 903 (1994).
 IN RE D.C.

 2021-NCSC-104

 Opinion of the Court

¶ 23 Respondent-father’s argument that the trial court focused on David’s interests,

 rather than respondents’ constitutionally protected rights to preserve their family

 intact, and erroneously placed David and respondents in adversarial roles, is based

 upon a statement made by the trial court at the conclusion of the adjudicatory phase

 of the termination hearing. The trial court stated that “[w]e’re here for -- not for

 [respondents]. We’re here for this child.”

¶ 24 At the conclusion of the adjudicatory portion of the termination hearing, the

 trial court’s full statement was:

 Well the case is made more difficult than a lot of these
 because just of the length of time it took for [respondents]
 to see the light. We’re here for -- not for [respondents].
 We’re here for this child. Had [respondents] taken the steps
 early on that I think these lawyers have finally got them at
 least going on, then we wouldn’t be here in the situation
 where [David] had been gone so long. But the court does
 find that there’s evidence to these grounds alleged in the
 petition.

 When read in its entirety and in context, it is apparent that the trial court was not

 acting under a misapprehension of law. First, the trial court noted in its pre-trial

 order that “[t]his matter shall proceed to adjudication, and, if warranted, to

 disposition[.]” (Emphasis added) See In re K.L.M., 375 N.C. 118, 121, 846 S.E.2d 488,

 490 (2020). The trial court recognized that respondents had a constitutionally

 protected interest in preserving familial bonds and that the matter would not proceed

 to disposition unless grounds for termination were proven. The trial court’s
 IN RE D.C.

 2021-NCSC-104

 Opinion of the Court

 statements further recognize that respondents acted inconsistently with that

 interest, parental unfitness had been established, and the trial court would be

 proceeding to the dispositional phase of the proceeding where determination of

 David’s best interests would be paramount. We therefore conclude that the trial court

 was not acting under a misapprehension of the law at adjudication.

¶ 25 The trial court’s conclusion that a ground for termination existed pursuant to

 N.C.G.S. § 7B-1111(a)(3) is sufficient in and of itself to support termination of

 respondents’ parental rights. In re E.H.P., 372 N.C. at 395, 831 S.E.2d at 53. As

 such, we need not address respondents’ arguments regarding N.C.G.S. § 7B-

 1111(a)(1), (2) and (6). Furthermore, respondents do not challenge the trial court’s

 conclusion that termination of their parental rights was in David’s best interests. See

 N.C.G.S. § 7B-1110(a) (2019). Accordingly, we affirm the trial court’s order

 terminating respondents’ parental rights to David.

 AFFIRMED.