592 S.E.2d 237 (2004)
In the Matter of RHOLETTER, Elizabeth, a minor child, DOB: 6-27-87.
In the Matter of Rholetter, Gloria, a minor child, DOB: 2-2-89, Nos. 01 J 30, 31.
Macon County Department of Social Services, Petitioner
v.
Bobby Rholetter, Shirley M. Rholetter, Sherry L. Heaton, Respondents.
No. COA02-1753.
Court of Appeals of North Carolina.
February 17, 2004.
*239 Jones, Key, Melvin & Patton, P.A., by Chester M. Jones, Franklin, for petitioner appellee.
Mary G. Holliday, Webster, for Guardian ad Litem-appellee, Catherine Wright.
Kay S. Murray, Lutz, FL, for respondent appellant.
TIMMONS-GOODSON, Judge.
Respondent Bobby Rholetter ("respondent") appeals the dispositional orders of the trial court awarding custody of two minor children to their biological mother, Sherry L. Heaton ("Heaton"). For the reasons stated herein, we affirm the orders of the trial court.
The pertinent factual and procedural history of the instant appeal is as follows: On 16 May 2001, the Macon County Department of Social Services ("DSS") filed a petition alleging that Elizabeth Rholetter ("Elizabeth") and Gloria Rholetter ("Gloria") (collectively as "the juveniles") were abused and neglected by respondent and Shirley M. Rholetter ("Shirley"), respondent's wife. An adjudication hearing was held wherein the trial court made the following pertinent findings of fact:
7. That on April 30, 2001, [Elizabeth] and [Shirley] did argue and fuss and [Elizabeth] was sent to her room. Thereafter, [Shirley] did go to [Elizabeth's] room and a fight broke out between [Elizabeth] and [Shirley]. [Elizabeth] did not start the fight. In the course of the fight, [Shirley] did hit [Elizabeth] with her open hand and her fist. She hit [Elizabeth] in [the] sic stomach and arm. She also pulled out a "hunk" of [Elizabeth's] hair.
8. That on this same occasion, [Gloria] did assist in trying to break up the fight, as aforesaid. She advised the Court that [Shirley] did have a hold of [Elizabeth's] hair and did have her legs around the neck of [Elizabeth], choking [her]. [Gloria] called law enforcement about the incident. [Gloria] saw [Shirley] swing at her and [Shirley] did hit [Gloria] in the side of the head and shoulder with a cookie jar, causing the cookie jar to break.
...
10. That after this April 30, 2001, incident as aforesaid, [DSS] attempted, without success, to work with [respondent] to address the situation and he met its representatives at the end of the Rholetter driveway and was very belligerent and hostile. [DSS] attempted to work with him on three occasions after the April 3, 2001, incident above-referenced before filing a Petition herein and securing a nonsecure custody order. On one occasion, [respondent] did not even answer the door or otherwise acknowledge [DSS] despite being present at his home when [DSS] attempted to discuss the matter with him. At no time prior to the filing of the Petition was [respondent] cooperative with [DSS] in its efforts to address the April 30, 2001, incident above-referenced.
...
12. That shortly after Christmas, 2000, [Shirley] did have another physical confrontation with [Elizabeth] in which [Shirley] did choke [Elizabeth] and hit her above her eye leaving a bruised eye. Additionally, she kicked [Elizabeth] in the back. [Elizabeth] did tell [respondent] of *240 the same the next day after it occurred in an effort to get the same stopped. [DSS] did investigate this incident and [respondent] delayed and obstructed [DSS's] investigation of the same.
...
14. That [Shirley] hits [Elizabeth] or [Gloria] sometimes daily and sometimes only two times per week.
...
19. [Shirley] was arrested on or about April 30, 2001, for two counts of misdemeanor child abuse and two counts of simple assault as a result of the April 30, 2001, incident above referenced, and went to jail.
20. That when [Shirley] was arrested as aforesaid, she was intoxicated and very belligerent.
...
22. That [respondent], the biological father of [the juveniles] did not respond to the charges against his wife arising out of the April 30, 2001, incident above-referenced.
23. That [respondent] knew or should have known all the physical violence that was going on between [the juveniles] and [Shirley] and should have taken appropriate steps to stop the same. However, [respondent] has failed to take appropriate steps to prevent or eliminate the same and as a result, the physical violence toward [the juveniles] has continued, culminating in the April 30, 2001, incident above-referenced.
...
28. That [Shirley] has smoked crack cocaine in the presence of [the juveniles]. She has advised [the juveniles] that it was crack cocaine.
29. That on [Gloria's] birthday, [Shirley] did take the $400.00 which was to be used for [Gloria's] birthday and she did buy crack cocaine with the same, causing [Gloria] to cry.
...
33. That [respondent] knew or should have known of the serious drug and/or alcohol abuse problems of [Shirley], but took no steps or took insufficient steps to deal with the same and continued to allow [Shirley] to serve as the caretaker for [the juveniles] while he knew or should have known that she was abusing alcohol and/drugs [sic] while caring for [the juveniles] and while he was at work.
Based on the trial court's findings of fact, the court concluded that respondent neglected the juveniles and that Shirley neglected and abused the juveniles. The trial court entered an order awarding DSS the legal and physical care, custody and control of the juveniles. The court further ordered that the juveniles' placement was within DSS's discretion pending a dispositional hearing. Respondent did not appeal this order.
On 19 November 2001, a dispositional hearing was held in which the trial court made the following findings of fact, to which respondent assigns error and argues on appeal.
26. The construction of the house of [Heaton] has been completed and that there will be a bedroom for [the juveniles].
27. That the concern raised by the second home study of contact with Mr. David McAlister is not a sufficient concern to rebut the constitutional presumption that [Heaton] is a fit and proper person to exercise custody of her minor children pursuant to Petersen v. Rogers, 337 N.C. 397, 445 S.E.2d 901 (1994) and those decisions of the Courts of the State of North Carolina applying Petersen.

....
29. On August 23, 2001, [DSS] had a conversation with [Shirley], the step-mother and caretaker for [the juveniles]. She advised [DSS] that she is very much in the picture. She informed [DSS] that she was going to "take care of business here" (i.e. her time sentenced to jail) and then come back to Franklin, N.C. She informed [DSS] that this was the best thing that ever happened to [respondent] and those girls, because he never spent time with them and at least now he was having to. She went on to inform [DSS] that since the girls have lived with someone else other people will see how the girls really are.
....

*241 37. That the biological mother of [the juveniles] is willing and able to provide proper care and supervision for [the juveniles] and that the residence of the biological mother is a safe home to [the juveniles].
Based on these findings and others not reproduced above, the trial court concluded as a matter of law the following to which respondent assigns error:
2. That pursuant to the provisions of N.C. Gen.Stat. Section 7B-903(a)(2)(b), the Court is of the opinion that the best interests of [the juveniles] would be served by the Court placing custody of [the juveniles] with [Heaton], the biological mother of [the juveniles], and should be ordered at this time.
3. That [Heaton], the biological mother of [the juveniles] has the constitutional presumption of fitness pursuant to Petersen v. Rogers, 337 N.C. 397, 445 S.E.2d 901 (1994) and its progeny, the presumption that she is a fit and proper person to exercise custody of [the juveniles].
4. That [DSS] has made reasonable efforts to prevent or eliminate the need for placement of [the juveniles] and reunify [the juveniles] with [their] family.
5. [DSS] is no longer required to make reasonable efforts to prevent or eliminate the need for placement of [the juveniles] and to reunify [them] with [their] family.
6. That [Heaton], the biological mother of [the juveniles] is willing and able to provide proper care and supervision of [the juveniles] in a safe home for [the juveniles].
The trial court thereafter entered an order placing the legal care, custody, and control of the juveniles with Heaton. Respondent appeals the dispositional order.
The issues on appeal are whether: (I) there is clear and convincing evidence to support the trial court's dispositional findings of fact; (II) the dispositional findings of fact support the conclusions of law; (III) the trial court was required to follow the recommendation of the South Carolina Department of Social Services; and, (IV) the transcript of the dispositional hearing adequately represents the evidence and testimony therein.
The trial court found as a fact and concluded as a matter of law that Heaton retains her constitutional presumption of fitness pursuant to Petersen v. Rogers, 337 N.C. 397, 445 S.E.2d 901 (1994), and that Heaton is willing and able to provide proper care and supervision of Elizabeth and Gloria in a safe home. These determinations, however, are more properly designated as conclusions of law. See In re Helms, 127 N.C.App. 505, 510, 491 S.E.2d 672, 675 (1997). Any determination requiring the exercise of judgment or the application of legal principles is more properly classified as a conclusion of law. Id. As such, the trial court's determination that Heaton retains her Petersen presumption and that she is willing and able to provide proper support in a safe home for Elizabeth and Gloria are more properly delineated as conclusions of law. See id.

I.
The North Carolina General Statutes define an abused juvenile as follows:
[A]ny juvenile less than 18 years of age whose parent, guardian, custodian, or caretaker:
a. Inflicts or allows to be inflicted upon the juvenile a serious physical injury by other than accidental means;
b. Creates or allows to be created a substantial risk of serious physical injury to the juvenile by other than accidental means
...
N.C. Gen.Stat. § 7B-101(1) (2003). The statutes further define a neglected juvenile as follows:
A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker ... or who lives in an environment injurious to the juvenile's welfare.... In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile lives in a home where ... another juvenile has been subjected *242 to abuse or neglect by an adult who regularly lives in the home.
N.C. Gen.Stat. § 7B-101(15) (2003).
In a neglect adjudication, the trial court's findings of fact must be supported by clear and convincing, competent evidence. In re Helms, 127 N.C.App. at 511, 491 S.E.2d at 676. If supported by clear and convincing, competent evidence, the findings of fact are deemed conclusive, even if some evidence supports contrary findings. Id.; In re Montgomery, 311 N.C. 101, 111, 316 S.E.2d 246, 253 (1984).
In the case sub judice, clear and convincing, competent evidence supports the trial court's findings of fact that Heaton completed the construction on her home and that Shirley informed DSS that she would continue to be part of respondent's life. Stacey Jenkins ("Jenkins"), a DSS social worker, testified that Heaton had "done some construction to the home and it was finished a couple of months back." The record also includes a DSS summary which references the conversation between Jenkins and Shirley at issue in this appeal. Respondent does not argue that the conversation never took place, instead, he argues that the court should have found Shirley's statements unreliable due to her mental illness. It is the trial court's role to assess witness credibility. In re Oghenekevebe, 123 N.C.App. 434, 440, 473 S.E.2d 393, 398 (1996). Accordingly, we conclude that the findings of fact contested by respondent are indeed supported by clear and convincing, competent evidence. Thus, this assignment of error is overruled.

II.
Respondent next assigns error to the numerous conclusions of law drawn by the trial court from the findings of fact. Our review of a trial court's conclusions of law is limited to whether they are supported by the findings of fact. Helms, 127 N.C.App. at 511, 491 S.E.2d at 676.

A.
A neglected juvenile may be placed in the custody of the non-custodial parent if the trial court determines such disposition to be in the best interests of the child. N.C. Gen. Stat. § 7B-903 (2003). There is no burden of proof at the dispositional hearing. In re Dexter, 147 N.C.App. 110, 114, 553 S.E.2d 922, 924 (2001). The court must only consider the best interests of the child. Id. In the case sub judice, the trial court made uncontested findings of fact that respondent had knowledge that his minor daughters were abused by Shirley and failed to protect them. The trial court further found that respondent had no plans to divorce Shirley and "has had a difficult time believing that [the juveniles have] been abused...." Conversely, the court found no adjudications of abuse or neglect of any juvenile by Heaton. The conclusion of law that it is in the best interest of the juveniles for Heaton to be awarded custody is supported by the findings of fact.

B.
Respondent next contends that the trial court improperly used the Petersen presumption to award custody of the juveniles to their mother. In Petersen, the North Carolina Supreme Court found that in custody disputes between parents and third parties, parents have a constitutionally-protected paramount right to the custody, care, and control of their children. Petersen v. Rogers, 337 N.C. 397, 445 S.E.2d 901 (1994). The Supreme Court based this principle on the presumption that a fit parent will act in the best interest of their child. Brewer v. Brewer, 139 N.C.App. 222, 229, 533 S.E.2d 541, 547 (2000). When the Petersen presumption is not implicated, the court must use the best interest of the child standard to determine the proper placement of the child. See Jones v. Patience, 121 N.C.App. 434, 440, 466 S.E.2d 720, 723-24 (1996). As the trial court in the case sub judice used the best interest of the child standard to award custody of the juveniles to Heaton, any misapplication of the Petersen presumption is without consequence. Id.

C.
Respondent next assigns error to the trial court's conclusion that DSS made "reasonable efforts" to prevent the need for the placement of the juveniles and to reunify *243 them with respondent. We find no error by the trial court.
"Reasonable efforts" is defined by the Juvenile Code as "diligent and timely use of permanency planning services by [DSS] to develop and implement a permanent plan" for the juveniles. N.C. Gen.Stat. § 7B-101 (2003). In this case, DSS completed two family services case plans with respondent "outlining what needs to be accomplished," provided supervised visits between respondent and the juveniles, and provided family counseling to the parties involved in addition to other services provided by DSS which are enumerated in the record. This evidence supports the conclusion that DSS made reasonable efforts to prevent the juvenile's removal from respondent's home. See Helms, 127 N.C.App. at 512-13, 491 S.E.2d at 676-77.

D.
Respondent argues that the trial court was required to conduct a hearing within 90 days of placing the juveniles with Heaton pursuant to General Statutes 7B-905. However, Section 7B-906 provides that "if at any time custody is restored to a parent, ... the court shall be relieved of the duty to conduct periodic judicial reviews of the placement." N.C. Gen.Stat. § 7B-906(d) (2003). While the trial court did not return custody of the children to respondent, it did restore custody of the children to their mother, Heaton. Thus, by restoring custody of the children to a parent, the trial court was relieved of the duty to conduct periodic judicial reviews of the placement pursuant to N.C. Gen.Stat. § 7B-906(d). See Dexter, 147 N.C.App. at 115, 553 S.E.2d at 925.

E.
Respondent further argues that the trial court erred by concluding as a matter of law that Heaton is willing and able to provide proper care and supervision of the juveniles in her home. We disagree.
In the present case, the court found as fact that Heaton has never been convicted of child abuse or neglect of any juvenile and maintains a clean and appropriate home. The court further found that supervised and unsupervised visits between Heaton and the juveniles have gone well and that both DSS and the Guardian ad Litem recommend Heaton be awarded custody of said juveniles. Respondent argues that Heaton's friend, Mr. David McAlister, poses a threat to the juveniles because McAlister's daughter alleged he sexually assaulted her, yet the record does not suggest that there has been a court finding of abuse or neglect on the part of McAlister. Heaton was ordered by the court to prohibit McAlister from visiting her home or having any contact with the juveniles under any circumstances. These findings of fact support the conclusion of law that Heaton is willing and able to provide proper care and supervision of the juveniles in a safe home. See Helms, 127 N.C.App. at 511, 491 S.E.2d at 676.

III.
Respondent next assigns error to the trial court's placement of the juveniles with their biological mother in South Carolina. Respondent asserts that the trial court was obligated to follow the mandates of the Interstate Compact on the Placement of Children ("Compact") as set forth in General Statutes § 7B-3800 (2003). We disagree.
The purpose of the Compact is to promote cooperation between party states in the interstate placement of children. N.C. Gen.Stat. § 7B-3800 (2003). As a condition for placement, the Compact reads in pertinent part that "[n]o sending agency shall send, bring, or cause to be sent or brought into any other party state any child for placement in foster care or as a preliminary to a possible adoption unless the sending agency shall comply with each and every requirement set forth in this Article...." Art. III(a) (emphasis added). When the statutory language is clear and unambiguous, there is no room for judicial construction and the courts must give the words of the statute their plain meaning. Correll v. Division of Social Services, 332 N.C. 141, 144, 418 S.E.2d 232, 235 (1992). We hold that the language in General Statutes § 7B-3800 is clear and unambiguous.
*244 In the case sub judice, the trial court did not place the juveniles in foster care or as a preliminary to adoption. The trial court granted custody of the juveniles to their biological mother. Thus, under the plain meaning of the statute, the trial court was not obligated to follow the mandates of the Compact.
On 4 June 2001, the trial court ordered the South Carolina Department of Social Services to complete a home study on Heaton. An employee of the South Carolina Department of Social Services met with Heaton in August and October of 2001 but declined to recommend placement of the juveniles with Heaton at either time. It is clear from the trial court's findings of fact that the court reviewed said studies in determining the best interests of the juveniles, but declined to follow South Carolina's recommendation.
Our Supreme Court has held that "[t]he essential requirement[ ] at the dispositional hearing ... is that sufficient evidence be presented to the trial court so that it can determine what is in the best interest of the child." In re Shue, 311 N.C. 586, 597, 319 S.E.2d 567, 574 (1984) (emphasis added). Furthermore, North Carolina caselaw is replete with situations where the trial court declines to follow a DSS recommendation. See, e.g., In re Shermer, 156 N.C.App. 281, 288, 576 S.E.2d 403, 408 (2003). Therefore, the trial court was not obligated to follow the home study recommendation. For the aforementioned reasons, we overrule respondents assignment of error.

IV.
In his last argument, respondent asserts that the transcript of the dispositional hearing is incomplete and therefore his constitutional right to due process and his statutory right to meaningful appellate review is denied. We disagree.
If a transcript is altogether inaccurate and no adequate record of what transpired at trial can be reconstructed, the court must remand for a new trial. In re Hartsock, 158 N.C.App. 287, 292, 580 S.E.2d 395, 399 (June 3, 2003) (No. COA02-912). Respondent specifically argues that the failure to properly record part of Jenkins's testimony at the dispositional hearing violates his rights to due process and meaningful appellate review. However, none of the nine findings of fact and conclusions of law in which respondent assigns error are supported solely on Jenkins' testimony. Thus, we conclude that respondent fails to evidence that the transcript is altogether inaccurate and inadequate. See Hartsock, 158 N.C.App. at 292, 580 S.E.2d at 399.
Affirmed.
Judges HUDSON and ELMORE concur.